PATRICK HOWARD, Appellant, *vs.* HENRY J. BURKE *et al.* Appellees.

*Opinion filed December 21, 1910—Rehearing denied Feb. 10, 1911.*

1. OFFICES—*a mere claim to be an officer does not constitute a person an officer de facto.* A mere claim to be a public officer does not constitute a person an officer *de facto* though he exercises the functions of the office, but there must be at least a fair color of right or authority, or acquiescence by the public in his official acts so long that he will be presumed to act as an officer either by right of appointment or election.

2. SAME—*an irregular or informal election or appointment is color of authority or title.* Color of authority or title to an office is authority or title derived from an election or an appointment, however irregular or informal, so that the incumbent is not a mere volunteer.

3. SCHOOLS—*when township board of education is a de facto board.* Where two boards of education for a township high school

are elected at different polling places at the same time and both organize and qualify but only one assumes to exercise the functions of a board of education, the latter may be regarded as the *de facto* board, even though the other board, which did nothing but organize and qualify, is the *de jure* board.

4. TAXES—*tax levied by de facto board of education will not be enjoined.* A tax levied for township high school purposes by a *de facto* board of education for such high school, which assumed to act under the authority of an election, will not be enjoined in equity in the absence of fraud, even though a judgment of ouster was entered against the members of the board in a *quo warranto* proceeding after the tax was levied.

5. SOLICITORS' FEES—*when fact of employment of solicitors is prima facie shown.* The fact of the employment of solicitors by the defendants to an injunction suit is *prima facie* shown where it appears from the record that certain solicitors appeared for the defendants in the preparation of pleadings, the taking of evidence and the argument of the motion for dissolution, and that the court, in making the order with reference to allowing the defendant's solicitors' fees, specifically named such solicitors as the solicitors for the defendants.

6. SAME—*fact that State's attorney might have acted does not preclude employing other solicitors.* While it is the duty of the State's attorney to appear for county officials, yet the fact that some of the defendants to a proceeding to enjoin the collection of a tax were county officials does not preclude the employment of other solicitors, nor the allowance of solicitors' fees to the defendants in case the temporary injunction is dissolved.

APPEAL from the Circuit Court of Christian county; the Hon. THOMAS M. JETT, Judge, presiding.

C. F. MORTIMER, and HOGAN & WALLACE, for appellant.

E. S. SMITH, and A. D. STEVENS, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant filed this bill in the circuit court of Christian county praying for an injunction to restrain the collection of certain taxes levied for township high school purposes.

The court, after a hearing, dissolved the temporary injunction and dismissed the bill, awarding $250 damages against the complainant. From that order and decree this appeal has been prosecuted.

In April, 1909, a township high school for township 13, north, range 4, west of the third principal meridian, lying partly in Sangamon and partly in Christian county, was established by a vote. No question is here urged as to the legality of that vote. May 3, 1909, the trustees of schools of that township met and decided to call an election for June 5 to choose a high school board. They instructed the township treasurer to post notices of election on May 24 but named no polling place, deciding to allow Riddle and Davis, two of the trustees, time to investigate as to the proper place for holding the election. The treasurer prepared the notices and inserted as the place for election the town hall of Pawnee, a village situated in the north-west part of said township. Said town hall had been for many years used as the polling place for school elections in the district. May 21 the president of the board of trustees, McTaggart, caused these notices to be posted. A few days later Riddle and Davis held a meeting of the board and authorized notices for an election on June 5, naming as the polling place the Hopewell school house, some three or four miles from Pawnee. These notices were also posted. The evidence tends to show that the school house was much nearer the center of the township than the town hall. Elections were held on the day in question in both places, and five members of the high school board were declared elected at the town hall meeting, each receiving 445 votes, and five other candidates each received 253 or 254 votes at the Hopewell school house election. All the voters at the town hall voted for one set of candidates and all the voters but one at the school house voted for the other set. Certificates of election were filed with the township treasurer as to both of these boards. On June 14 the

Hopewell board met and determined by lot the term of office of its members and elected a president and secretary, the certificate of such election being filed with the township treasurer. No further meetings appear to have been held by that board nor any other business transacted. Several of its members testified that they did not want to do anything until they found how the court proceedings came out. The board of education elected at the town hall meeting met on June 8, determined by lot the tenure of office of its members, elected a president and secretary, and later filed a certificate of such election with the township treasurer. On the same day it resolved to erect a high school building and hold an election to decide on the questions of issuing bonds and the selection of a site. Notices were thereafter posted as to such election and it was held on June 19, the vote being 226 for and 6 against the issuance of the bonds, and a site was also selected by the voters at the same election. July 31 this board held another meeting and resolved that the sum of $5000 be levied as a tax for high school purposes. August 7 the same board employed a principal for nine months of school, and on September 4 accepted a proposition from the district board to furnish the high school board with a room, heat and janitor service for nine months for $500. October 2 an assistant principal was employed, and from time to time other orders were entered and payments authorized. This high school seems to have been in actual operation under the management of this board elected at the town hall meeting until about the time of the judgment of ouster in the *quo warranto* proceedings. June 18, 1909, *quo warranto* proceedings were instituted in the circuit court of Sangamon county against the persons composing the so-called town hall board, and a judgment of ouster was entered against them January 14, 1910, on the ground that the notices of election were illegal because the trustees had not designated the town hall as the place of election. As

stated above, the town hall board, at a meeting held on
July 31, 1909, passed a resolution that the sum of $5000
should be levied against the taxable property of the dis-
trict for high school purposes, and a certificate of levy was
thereafter filed with the township treasurer and with the
clerks of Sangamon and Christian counties. The bill in
the case at bar sought to enjoin the clerks and county treas-
urers of both these counties and all the members of the
two high school boards from taking any steps toward the
collection of said tax. On the hearing the court found that
the town hall board was exercising its duties and acting as
a high school board of education *de facto* when it made
such levy and that the Hopewell board was not at that time
exercising the duties of the high school board, and dis-
solved the temporary injunction.

The chief question in dispute in this case is whether
the so-called town hall high school board was a *de facto*
board at the time the resolution to levy such taxes was
passed. It is conceded by both sides that on the record in
this case the Hopewell board was the *de jure* board on that
date. Counsel for appellant insist that the Hopewell board
on that date was also the *de facto* board, and that there-
fore the town hall board could not have been a *de facto*
board; that two persons cannot be officers *de facto* in the
same office at the same time, as there cannot be two in-
cumbents at once. *State* v. *Blossom,* 19 Nev. 312; *Aud-
itors* v. *Benoit,* 20 Mich. 176; Throop on Public Officers,
sec. 641.

A mere claim to be a public officer and exercising the
office will not constitute one an officer *de facto.* There must
be at least a fair color of right or an acquiescence by the
public in his official acts so long that he will be presumed to
act as an officer either by right of appointment or election.
(*Brown* v. *Lunt,* 37 Me. 423.) A *de facto* officer was de-
fined by Lord Ellenborough as "one who has the reputa-
tion of being the officer he assumes to be and yet is not

a good officer in point of law." (*Rex* v. *Bedford Level,* 6 East, 356; *Barlow* v. *Standford,* 82 Ill. 298; *State* v. *Carroll,* 38 Conn. 449; 8 Am. & Eng. Ency. of Law,—2d ed.—p. 781, and cases cited.) Color of title to an office has been defined to be "that which in appearance is title but which in reality is no title." (*Wright* v. *Mattison,* 18 How. 50; 8 Am. & Eng. Ency. of Law,—2d ed.—794.) Color of authority (which is usually considered synonymous with color of title) to an office is held to be authority derived by an election or an appointment, however irregular or informal, so that the incumbent be not a mere volunteer. (McCrary on Elections,—4th ed.—sec. 253; *State* v. *Oates,* 86 Wis. 634; *People* v. *Lieb,* 85 Ill. 484.) The board of education elected at the town hall meeting was the only board of education that assumed or attempted to transact any business for said township high school district up to and after the time of making the levy in this case and the beginning of this proceeding. Its members were not mere volunteers. They were elected at an election held under notice, at which they received a much larger vote than was cast for the Hopewell board of education. They had a certificate of election from the proper officials if a proper notice for the town hall election had been given. We are disposed to hold that under the decisions they had such color of authority to act as would make them *de facto* officers under the circumstances of this case. It must be conceded on this record that there existed *de jure* offices, as to said high school board, to be filled, and that the Hopewell board were the *de jure* officers. While there cannot be a *de facto* officer if a *de jure* officer is exercising the functions of the office in question, (*McCahon* v. *Commissioners,* 8 Kan. 293; *Powers* v. *Commonwealth,* 110 Ky. 386; 29 Cyc. 1392;) such was not the case here. The Hopewell school board, after it was organized, did not attempt to act as a board. The so-called town hall board, from the time of their election until they were ousted in the *quo warranto*

proceedings, assumed to act as such board of education. They were the only officials that did attempt to so act. They were in actual possession of the office. Their possession was acquiesced in and acknowledged by the public to such an extent that, so far as the public and third persons are concerned, they must be held to be the *de facto* board of education at the time this levy was made. *City of Chicago* v. *Burke,* 226 Ill. 191; *Samuels* v. *Drainage Comrs.* 125 id. 536; *Pritchett* v. *People,* 1 Gilm. 525; *Attorney General* v. *Crocker,* 138 Mass. 214; 29 Cyc. 1393, and cases cited.

Judicial decisions are practically a unit in holding that the acts of officers *de facto,* so far as they affect third parties or the public, in the absence of fraud, are as valid as those of officers *de jure.* This is a wise and salutary rule. This being so, equity will not enjoin the collection of a tax levied in proper form by officials who are acting as *de facto* officers. *Schofield* v. *Watkins,* 22 Ill. 66; *Merritt* v. *Farris,* 22 id. 303; *Metz* v. *Anderson,* 23 id. 410; *Union Trust Co.* v. *Weber,* 96 id. 346; *Sharp* v. *Thompson,* 100 id. 447.

It is further urged that the damages allowed of $250 for solicitors' fees cannot be sustained because there is no evidence preserved in the record showing that such fees were reasonable or should have been allowed. The temporary injunction was dissolved on hearing. Suggestions in writing were filed stating the nature and amount of the damages claimed. Instead of hearing evidence as to the amount of the damages, a stipulation was filed by which it was agreed that "the evidence, if heard, would show that the damages for the defendants, by reason of solicitors' fees, etc., would be in the sum of $250." The authorities cited by counsel for appellant, such as *Hamilton* v. *Stewart,* 59 Ill. 330, to the effect that under the practice in our courts a party should not be mulcted in damages until he

shall first have had an opportunity to be heard in his own defense after the nature of the demand has been stated in court, are not in point. The reason for this rule does not apply when there is a stipulation in the record which waived the hearing and the preservation of the evidence on the question in dispute.

It is further insisted that the record does not show the employment by the defendants of the solicitors who were allowed fees in this case. The record shows that these solicitors appeared for the defendants in the injunction suit, in the preparation of the pleadings, the taking of evidence and the arguing of the motion for dissolution of the injunction, and that the injunction was dissolved. This work was for the benefit of the defendants. The court, in making the order allowing defendants' solicitors' fees, specifically named the counsel here in question as the solicitors for defendants. These facts are *prima facie* proof that these solicitors were employed by the defendants, and it will be presumed that they were properly employed until the contrary is shown. It is also insisted that some of these defendants were county officials, and, as it was the duty of the State's attorney to appear for them, it was not lawful to allow solicitors' fees to counsel here in question. While it is true the statute makes it the duty of the State's attorney to appear for county officials, there is no law precluding the employment of other counsel. On this record the services of these solicitors appear to have been proper and necessary, and the court did not err in allowing the fees in question.

We have considered all the questions raised in the record and find that the decree of the circuit court must be affirmed.

*Decree affirmed.*