Lena L. Ziegler, as Administrator of the Estate of Donald E. Ziegler, and Lena L. Ziegler, Individually, Appellant, v. Lucille M. Smith, Appellee.

Gen. No. 67–22.

Second District.

August 22, 1967.

O'Brien, Burnell, Puckett and Barnett, of Aurora, and Don Schumacher, of Hinckley, for appellant.

Fearer and Nye, of Oregon, for appellee.

MR. PRESIDING JUSTICE DAVIS delivered the opinion of the court.

This is an action brought by Lena L. Ziegler, individually and as Administrator of the Estate of Donald E. Ziegler, deceased (her husband), seeking damages for his wrongful death and for funeral expenses. The jury returned a verdict for the defendant, Lucille M. Smith. The trial court entered judgment on the verdict and the plaintiff appealed.

The plaintiff contends that a certain remark made by defense counsel in his closing argument and two instructions given on behalf of the defendant, constitute reversible error.

The decedent, Donald E. Ziegler, was struck and killed on December 3, 1965, while carrying hay off the highway. Some bales of hay previously had fallen from his pickup truck onto the westbound traffic lane of Perry Road, a well-traveled blacktop road. Ziegler turned his truck around, drove back to where the hay had fallen and parked his truck partially on and partially off the south side of the road, preparatory to picking up the hay.

Arthur Stiegleiter, a witness to the accident, was driving in the westbound lane of Perry Road between the time when the hay fell off the truck and when the decedent had returned to pick it up. Stiegleiter's daughter was in the car with him. He did not see the bales of hay on the road in time to avoid hitting them and struck one bale which was in the center of the westbound lane.

There was an incline in the road from the east to the spot where the bales had fallen; then there was a slight leveling off toward the crest of the incline; and a decline as the road continued westerly. The road was marked to indicate a no-passing zone for the westbound traffic as it approached the spot in question. Stiegleiter testified that he didn't see the hay until his headlight beams dropped down over the crest of the hill; and that he didn't pull out into the eastbound lane of traffic since he couldn't see whether any eastbound cars might be coming up the hill. When he hit the bale of hay, it loosened or broke and hay flew over the road. Stiegleiter drove onto the next crossroad, examined his car, and then returned to the scene to remove the remaining bales of hay from the road.

The decedent was already there when Stiegleiter returned to the scene. Stiegleiter parked his car behind

the decedent's pickup truck. Both vehicles were on the south or eastbound side of the road, mostly on the shoulder, with their headlights on, facing the oncoming westbound traffic. It was approximately 5:15 p. m., and it was dark.

The defendant then approached the scene, driving an Oldsmobile car in a westerly direction, at approximately forty to fifty miles per hour. Her headlights were on. She testified that she saw the two stopped vehicles and two people standing next to the Stiegleiter car, but at no time did she see anyone in her lane of traffic; that she was about even with the two vehicles when she heard a thud on the right side of her vehicle; and that she later learned she had hit the decedent.

Stiegleiter testified that the decedent, at the time, was picking up hay in the westbound lane; that he (Stiegleiter) first saw the defendant's approaching headlights when they were about fifty to seventy-five feet away; that he yelled to the decedent to watch out; and that the decedent—who had his arms full of hay and had started toward the truck—then looked in the direction of the approaching car and started for the north side of the road but was struck before he got off the westbound lane of traffic.

 In the course of the closing arguments, plaintiff's counsel said: "Obviously, if she struck somebody they are going to be killed. That's just what happened." Defense counsel, in reply, referred to plaintiff's argument and said: "Now, taking Mr. Puckett's argument, you would say or you might say that Mrs. Smith is a killer." We agree with the plaintiff that this argument was improper, and that the trial court should have sustained the objection thereto. The word "killer" has a sinister connotation and could prejudice a jury. However, the question remains whether or not this impropriety was sufficiently prejudicial to warrant a

219

reversal. We will consider that question along with the errors alleged regarding the instructions.

■ The plaintiff claims that the following instruction, given at defendant's request, was erroneous:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain Statute which provided that: No vehicle shall be driven or moved on any highway unless such vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping therefrom, except that sand may be dropped for the purpose of securing traction, or water or other substance may be sprinkled on a roadway in cleaning or maintaining such roadway.
>
> "No person shall operate on any highway any vehicle with any load unless said load and any covering thereon is securely fastened so as to prevent said covering or load from becoming loose, detached, or in any manner a hazard to other users of the highway. If you decide that a party violated this Statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

The plaintiff contends that there was no evidence that the decedent's truck was loaded in a manner violative of the statute. Stiegleiter testified, however, that the decedent told him it was his (the decedent's) hay. We believe that such statement and the other factual circumstances of record, offer a sufficient basis to permit the jury to infer that the bales of hay fell off the decedent's truck which was loaded in such a manner as to permit part of its load to fall upon the highway. We cannot say that the instruction was without any eviden-

tiary basis and that the defendant was not entitled to have the jury instructed on this theory of his case.

■ The violation of a statute may constitute contributory negligence. Bonnier v. Chicago, B. & Q. R. Co., 2 Ill2d 606, 612, 613, 119 NE2d 254 (1954). Whether or not the statute was violated, and if so, whether such violation in this case constituted contributory negligence, was properly a jury question to be considered with all other facts of the case, as was the question of whether such negligence proximately contributed to the decedent's subsequent injury and death. Bonnier v. Chicago, B. & Q. R. Co., supra, 613; American Nat. Bank & Trust Co. v. Pennsylvania R. Co., 52 Ill App2d 406, 423, 202 NE2d 79 (1964) ; Miller v. Burch, 254 Ill App 387, 395 (1929).

■ The plaintiff also complains of the following instruction, given at defendant's request:

"There was in force in the State of Illinois at the time of the occurrence in question a certain Statute which provided that: Whenever any motor vehicle of the second division is disabled during the period between sunrise and sunset and such vehicle cannot immediately be removed from the main traveled portion of a highway outside of a business or residential district, the driver or other person in charge of such vehicle shall cause such red warning flags to be placed upon the way, one at a distance of approximately 200 feet in advance of such vehicle and one each at a distance of approximately 200 feet and 100 feet respectively to the rear of the vehicle. Whenever any motor vehicle of the second division is disabled during the period between sunset and sunrise and such motor vehicle cannot immediately be removed from the main traveled portion of a highway outside of a business or residential district, the driver or other person in charge of such vehicle shall cause such flares, lanterns, red deflectors, or

221

other signals to be lighted and/or placed upon the highway, one at a distance of approximately 100 feet in advance of such vehicle, one at a distance of approximately 100 feet to the rear of the vehicle, and the third upon the roadway side of the vehicle except that if the vehicle is transporting flammables three such red reflectors shall be so placed and no open burning fire shall be placed adjacent to any such last mentioned vehicle. If you decide that a party violated the Statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

We do not find any factual justification for the giving of this instruction. There was no evidence of the pickup truck being disabled and no basis for the instruction. Marut v. Costello, 53 Ill App2d 340, 358, 359, 202 NE2d 853 (1964); Hedge v. Midwest Contractors Equipment Co., 53 Ill App2d 365, 384, 385, 202 NE2d 869 (1964). Nor can we understand how the violation of this statute could constitute contributory negligence under the facts of this case.

■ There remains the more difficult question of whether the improper argument and instruction are sufficiently prejudicial to warrant us to reverse the verdict of the jury and judgment of the trial court. The plaintiff has cited a number of cases wherein improper argument led to a reversal. In a number of these, the persistence of counsel in continuing with improper comments made obvious the fact that counsel was more concerned with arousing the passions and prejudices of the jury than with having the jury return a verdict based on the facts before it. See: Chicago North Shore & M. R. Co. v. Title & Trust Co., 328 Ill 610, 622–624 incl.,

160 NE 226 (1928). We do not mean to imply that counsel must persist in improper argument in order to justify a reversal on that basis, but such persistence indicates the purpose of counsel in his argument and enhances the danger of its prejudicial effect on the jury.

█ In this case, the record reflects that defense counsel made no attempt to prejudice the jury. The comment was not repeated, and the balance of the argument was well within permitted limits. We do not believe that this statement was prejudicial to the plaintiff. Under the evidence, we can neither conclude that a different result might be expected, absent the improper argument, nor that this impropriety deprived the plaintiff of a substantial legal right which would warrant our reversal of the case. The People v. Stahl, 26 Ill2d 403, 406, 186 NE2d 349 (1962); Styburski v. Riverview Park Co., 298 Ill App 1, 15, 16, 18 NE2d 92 (1938).

█ In our determination of the case, we reach the same conclusion with reference to the effect of the improper instruction. Our review of the entire record convinces us that the case was fairly tried and that the jury reached a proper verdict under the facts of the case. We do not believe that a retrial could lead to a different result. It was dark at the time of the accident. The road was blacktopped. The incline obstructed the view of approaching vehicles. Stiegleiter confirmed this fact in his testimony when he stated that he did not see the bales of hay until it was too late to avoid them. At the time the defendant approached the scene of the accident, her vision was further impaired by the headlights of the two vehicles which were parked, facing her, on the eastbound traffic side of the road and on the shoulder. This would not cause her to anticipate that a person would be walking on her side of the road.

While we are loathe to affirm a case where there has been an improper argument and instruction, yet under the particular facts of this case, we believe that such

223

action is proper and required. Pitrowski v. New York, C. & St. L. R. Co., 6 Ill App2d 495, 501, 128 NE2d 577 (1955) ; Rithmiller v. Keenan, 3 Ill App2d 214, 221, 121 NE2d 46 (1954) ; Loucks v. Pierce, 341 Ill App 253, 261, 93 NE2d 372 (1950).

 The object of the review of judgments of trial courts is not to determine whether the record is free from error but to ascertain whether a just conclusion has been reached, founded upon competent and sufficient evidence, in a trial in which no error has occurred which might be prejudicial to a litigant's rights. The People v. Storer, 329 Ill 536, 542, 161 NE 76 (1928) ; Reske v. Klein, 33 Ill App2d 302, 312, 313, 179 NE2d 415 (1962) ; Johnson v. Chicago & N. W. Ry. Co., 9 Ill App2d 340, 357, 358, 132 NE2d 678 (1956).

Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

MORAN and ABRAHAMSON, JJ., concur.