JOSEPH ANDRULIS, Plaintiff-Appellee, *v.* FIRST NATIONAL BANK OF LAKE FOREST, as Trustee *et al.*, Defendants-Appellants.

(No. 71-13;

Second District—March 22, 1972.

*Rehearing denied May 1, 1972.*

Mark Drobnick, of Waukegan, and Robert J. Nolan and Owen N. Price, both of Chicago, for appellants.

John F. Grady, of Waukegan, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Defendants Joseph and Jerome Drobnick appeal from a decree of the Circuit Court of Lake County in which an accounting was made and a winding up commenced of a partnership in real estate between defendants and the original plaintiff, Joseph Andrulis. Andrulis died during the course of this ten-year litigation and his executor, Vera Andrulis, was duly substituted in his stead.

The trial court determined the existence of the partnership, the liabilities of the partners to it and their respective interests in its property. It

further found that the assets of the partnership consisted of certain real estate which could not be divided between the partners without destroying its value for development purposes and therefore, should be sold and the proceeds applied to the partnership liabilities and distributed to the partners as their respective interests were found to be in the decree.

Two issues are presented for review: (1), Do infirmities in the appointment of the master in chancery in this case require trial *de novo*? (2), Was a statutory partition of the partnership real estate decreed by the court?

A written partnership agreement was entered into between Joseph Andrulis and the defendants in 1946 (together with another person whose interest defendants have since acquired) for the purpose of dealing in real estate for a ten year term. After term, the partners not having been able to agree on a division of assets, Anrulis initiated this action for an accounting to him by his partners of his interest in the partnership and the partition of those properties found to be subject to division between the partners.

The trial court referred the matter to its then acting master in chancery, Daniel Dalziel, who conducted hearings on the issues during the years 1962 through 1965 and on November 7, 1967, by order of the trial court, filed his report and findings. Thereafter, on January 22, 1968, defendants moved the trial court to strike its order of reference to the master made in 1962, expunge the master's report and for trial *de novo* of the issues in this case. Defendants' motion was denied, the master's report confirmed, and the decree herein entered accordingly.

Defendants contend first that Daniel Dalziel was not a master in chancery when the order of reference was made in 1962, and, in absence of a further order of court extending his term for consideration of this case, he lost authority to do so after January 1, 1964, the effective date of the amendment to the Illinois Constitution of 1870 abolishing the office of master in chancery.

In their brief defendants rely upon citations of statute and various articles of the Illinois and United States Constitutions to support their view due process requires trial *de novo* of this case. No other citations of authority are suggested by defendants for our consideration.

It is not disputed that Mr. Dalziel had served as master of the trial court prior to the referral of this case, having been previously so appointed for a term commencing January 1, 1960, and extending to December 31, 1961, "and until his successor shall have qualified." He was next reappointed to that office by order entered November 6, 1963, for a period extending to November 6, 1965, "and until his successor

shall have qualified." At each appointment the master duly filed his bond and oath.

It may fairly be seen from the record of this case that the trial court and all of the parties considered Mr. Dalziel to be the duly appointed, as well as acting, master of the trial court. The parties appeared before him for twenty-seven hearings over these years in which numerous witnesses testified, including the now-deceased partner, Joseph Andulis. The master has certified to the court that he applied 317 hours to consideration of this case prior to filing his report in 1967 by order of the court. No objections to the master's status were made by defendants at any time before he filed his report in form substantially adverse to defendants' position in the case.

■■ It has been well settled that an officer who holds over after expiration of his term is regarded as a *de facto* officer whose acts are as valid and binding where they concern the rights of third persons or the public as though he was a *de jure* officer. Title to such an office can only be decided in a direct proceeding brought for that purpose. (*People v. Woodruff*, 9 Ill.2d 429, 437; 137 N.E.2d 809; 29 I.L.P., Officers, Section 5, page 60; C.J.S., Officers, Section 141, page 444.) In *People ex rel. Jones v. Beach*, 77 Ill. 52, the court considered the status of a hold-over master in chancery, stating:

> "Relator from that time (the expiration of his term) until appellee was appointed, was, no doubt, an officer *de facto*, and as such his acts would be binding as to all persons, including his sureties on his official bond, as his right to the office can only be questioned by a proceeding of this character (*quo warranto*)".

In *Pritchett v. People*, 6 Ill. 525, the court considered a similar question in a suit on the bond of an administrator who had been appointed by a probate judge after the judge's term had expired and before his reappointment to that office. The court held the judge was a *de facto* probate judge, stating at page 529:

> "It is sufficient for all the purposes of this case if he was *de facto*, the Judge of Probate. It is a general principle of law, that the ministerial acts of an officer *de facto* are valid and effectual when they concern the public, and the rights of third persons, although it may appear that he has no legal or constitutional right to the office. The interests of the community imperatively require the adoption of such a rule."

The principles stated giving a *de facto* officer the same status as between the public and the parties for whom he acts as a *de jure* officer have, for good reason, been consistently followed in the reported cases. *People ex rel. Engle v. Kerner*, 32 Ill.2d 212; 205 N.E.2d 33; *Harvey v.*

*Sullivan,* 406 Ill. 472, 478, 94 N.E.2d 424; *People v. Board of Review,* 19 Ill.2d 424; *Howard v. Burke,* 248 Ill. 224, 93 N.E. 775; *People v. Severinghaus,* 313 Ill. 456, 145 N.E. 220; *Freese v. Glos,* 248 Ill. 280, 93 N.E. 745.

■■ The amendment to the judicial article of the Constitution of 1870 abolishing the office of master in chancery effective January 1, 1964, did not alter the status of the master in this case. Article 6, Section 8, Constitution of 1870; Paragraph 8, Schedule to Article 6, Constitution of 1870.

The implementing schedule of the amendment to the judicial article provided that a master in chancery in office on January 1, 1964, shall continue in that office to the end of his term, "and may thereafter by order of court, wherever justice requires, conclude matters in which testimony has been received." On that date, the master in this case was in office, by statutory appointment, in a term ending November 6, 1965. He had received the testimony of this case and, by order of court, he concluded his consideration of this matter and filed his report on November 7, 1967. The requirements of the schedule and the constitution were met. Rules of Supreme Court, 1965, Rule 14—1, Masters in Chancery.

Defendants do not present any issue as to the conduct of the hearings before the master, the evidence there received, the conclusions reached by the master or the findings entered thereon by the trial court. Nor do they assert that any prejudice to them resulted from the procedural oversight of a timely reappointment of the master at the initial referral to him in 1962 or at any other time.

■■ We conclude that Mr. Dalziel was the duly appointed and acting master in chancery of the trial court during most of the times questioned in this appeal and that at all other times was *de facto* master. The trial court correctly considered the master's report filed in this case and a trial *de novo* of the issues is not required.

Defendants further contend the trial court may not decree the partition sale of the partnership real estate pursuant to the provisions of the Partition Act, Ill. Rev. Stat. ch. 106, par. 44, *et seq.* We agree and find that the trial court does not do so here.

■■ Real estate of a partnership is, by both statute and decision, deemed personal property insofar as the interests of the individual partners are concerned and it remains personalty for purposes of distribution after dissolution and the winding up of the affairs of the partnership. Uniform Partnership Act, Ill. Rev. Stat. ch. 106½, par. 26; *Wharf v Wharf,* 306 Ill. 79, 85—86, 137 N.E. 446; *Swirsky v. Horwich,* 382 Ill. 468, 47 N.E.2d 452; *Escarraz v. Escarraz,* 15 Ill.App.2d 262, 268, 145 N.E.2d 772.

■■■ On the death of a partner his interest in partnership property, including real estate, vests in the surviving partners; as a partner's interest in a partnership is his share of the profits and surplus, it so vests as personal property to be held by the surviving partners in trust subject to such winding up processes as may be undertaken by them or, in the proper case, by the court. Uniform Partnership Act, Ill. Rev. Stat., ch. 106½, pars. 32 and 37; *In re Estate of Trapani*, 21 Ill.App.2d 19, 32 and 36, 157 N.E.2d 83.

■■ It necessarily follows in this case that the realty in issue vested in the defendants, as surviving partners, on the death of Joseph Andrulis and was not, therefore, held in a tenancy with the present plaintiff, the deceased partner's legal representative, which can be subject to partition under Section 44 of the Partition Act.

As earlier noted, on the death of Joseph Andrulis his executor was substituted as plaintiff and the cause proceeded to an accounting and determination by the court of the interests in and liabilities of the partners in the partnership. The decree found, too, that the partnership should be dissolved by the court, pursuant to Section 32 of the Partnership Act, by reason of the failure of defendants, as managing partners, to fully comply with their fiduciary responsibilities to the partnership. Control of the winding up of the affairs of the partnership was retained by the court as it is authorized to do, on cause shown, under Section 37 of the Partnership Act.

No issue is raised suggesting any lack of authority in the trial court, in the exercise of its equitable powers, to direct a judicial sale of the partnership realty found necessary to wind up its affairs by the court. (See Chancery, Ill. Rev. Stat., ch. 22, pars. 42, 48; 68 C.J.S., Partnership Section 438, page 987.) On this appeal, defendants direct our attention only to that portion of the decree purporting to require such sale pursuant to the Partition Act and the resultant attorney's fees there authorized.

■■ There is ambiguous language contained in the decree wherein it directs the commissioner, who was appointed by the court to appraise the real estate, to partition it if that can be done without injury to the parties. We do not consider that direction as requiring or authorizing a sale of the property under the Partition Act. The trial court had determined the property could not be divided without injury to its value and must be sold intact and at most, it may be considered a prudent direction by the court for the commissioner to currently consider that question in making his appraisal and report to the court as the terms and conditions of sale have not yet been fixed by the court nor has an order of sale yet been entered.

■■ It has been generally held that in the absence of an authorizing statute, or in certain other circumstances not here applicable, attorney's fees will not be allowed. (*House of Vision, Inc., v. Hiyane*, 42 Ill.2d 45, 51, 245 N.E.2d 468.) That view was followed in an earlier case concerned with a partnership accounting. (*Cooper v. McNeil*, 9 Ill.App. 97.) Since no such fees have been fixed or ordered paid in this case, however, we will not further consider that issue here.

A portion of defendants' reply brief argues matters neither raised by them in their original brief nor responsive to the arguments presented in plaintiff's brief. These issues will not be considered by us. Supreme Court Rule 341(g), Ill. Rev. Stat., ch. 110A, par. 341(g).

■■ This litigation has progressed slowly over an inordinately long period of time. The circumstances with which the trial court has been presented have been unsual and have been met fairly to all of the parties and in accord with law. We have previously stated in *Ziegler v. Smith*, 86 Ill.App.2d 215, 224, 229 N.E.2d 340, that:

"The object of the review of judgments of trial courts is not to determine whether the record is free from error but to . ascertain whether a just conclusion has been reached, founded upon competent evidence, in a trial in which no error has occurred which might be prejudicial to a litigant's rights."

We believe that object is reflected in the decree of the trial court here and, therefore, it will be affirmed and this cause remanded for such further proceedings as may be necessary in accordance with the decree and the opinion of this court.

Decree affirmed.

GUILD and ABRAHAMSON, JJ., concur.