MULLANEY, WELLS & COMPANY, Plaintiff-Appellant, *v.* BARNARD A. SAVAGE, JR., *et al.*, Defendants-Appellees.

(No. 60913;

First District (5th Division)—August 8, 1975.

James L. Perkins and John Huff, both of Chicago (Winston & Strawn, of counsel), for appellant.

Francis B. Stine, of Chicago (Brown, Stine, Cook & Hanson, of counsel), for appellee Barnard A. Savage, Jr.

Poulakidas, Poulakidas and Wood, of Chicago (Thomas Poulakidas, of counsel), for appellee S. C. Williams, Jr.

Robert V. Hogan, Ellen Kane Munro, and Quinn, Jacobs & Barry, all of Chicago, for appellee Glen Ellyn Corp.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal allowed pursuant to Supreme Court Rule 306 (Ill. Rev. Stat. 1973, ch. 110A, par. 306) from an interlocutory order granting a new trial. In the original chancery action, filed in 1963, plaintiff charged that defendant Savage, while employed by it, usurped a corporate opportunity to the advantage of himself and the other defendants, his partner Williams, and the Glen Ellyn Corporation (Glen Ellyn). In February of 1965, the trial court assigned the cause for hearing to Seymour Price, then a master in chancery. The subsequent hearings resulted in a transcript of over 2,400 pages of testimony. On February 1, 1971, the master completed a preliminary report containing his proposed findings of fact and conclusions of law with a recommendation that defendants be held jointly and severally liable to the plaintiff "in the amount of $800,000 and for other sums."

Various extensions of time to file objections to the preliminary report were granted by the master; however, before the record and his preliminary report were certified to and filed with the court, Master Price took office as a magistrate of the Circuit Court of Cook County. Thereupon, Savage moved that Judge Price be disqualified from taking any further action as a master and that a trial de novo be ordered. The trial court ordered that Judge Price certify the record and his preliminary report, and further ordered that it would pass on objections to the report.

Savage objected to that order on the grounds that Price no longer had jurisdiction as a master to certify the record or to submit his report because of his appointment to the judiciary.

This court permitted an appeal by these three defendants from that order and, in our opinion therein (*Mullaney, Wells & Co. v. Savage*, 5 Ill.App.3d 1, 282 N.E.2d 536), we held that the former master had "continuing jurisdiction," even though he had become a judge, to rule on whatever objections might be filed to his preliminary report and then to certify that report. Thereafter, the master's report was returned, containing some 34 pages of his conclusions of fact and law, with a recommendation that a decree be entered in favor of plaintiff for $800,000 and that costs be assessed against defendants.

We are informed by counsel at oral argument, though not contained in the record, that a list of special exceptions to the master's report comprising some 72 pages was prepared and presented to the trial court. The record does disclose, however, that a "Motion to Expunge the Order of This Court of December 3, 1965 and to Request a Trial De Novo of the Cause" was made in the trial court by Glen Ellyn. The December 3, 1965, order continued the office of Master Price beyond the expiration of his term to conclude the matter before him. In its motion to expunge, Glen Ellyn alleged that on February 28, 1965, this cause was referred to Master Price; that on July 14, 1965, proceedings were held before him without any testimony taken, because it was then determined that the parties were not at issue and the proceedings were then continued without any set date; that the term of the master expired December 6, 1965[1]; that paragraph 8 of the Transition Schedule (Ill. Const. (1870), art. VI, § 21, par. 8) provided that the office of a master in chancery may be extended beyond the expiration of his term to "conclude matters in which testimony has been received"; that Glen Ellyn was informed and believed that sometime prior to December 3, 1965, Master Price held a hearing at which some preliminary identification testimony might have been received; that no notice of such hearing was given Glen Ellyn, as indicated by its records and those of the court; that on November 30, 1965, Master Price served certain parties with notice of motion stating he would appear before Judge Lupe on December 3, 1965, to request that he be allowed to continue to act after December 6, 1965, to conclude the matters referred to him in this cause; that neither Glen Ellyn, nor its counsel received any notice of such motion; that Glen Ellyn's name is

[1] Under an amendment to the 1870 Constitution, the office of master in chancery was abolished effective January 1, 1964. However, masters then in office were allowed to complete their term of service.

not contained in the notice of motion; that on July 11, 1966, Master Price confirmed that he was first taking testimony on that date by saying: "Well, in view of the fact of the amended complaints, I think if you wish you can start from the beginning because that was the arrangement to disregard everything that transpired here before"; that the testimony certified by Master Price reveals that all witnesses were sworn on or after July 11, 1966, well after Master Price's term had expired; that he, therefore, had no jurisdiction or authority to act in the matter; and that, if any testimony was taken prior to the December 3, 1965, order, it was not of such substantial character as to justify the continuation of the master's term. Wherefore, Glen Ellyn moved that it be granted a trial de novo of the cause, that the order of December 3, 1965, continuing the office of Master Price be set aside, and that the report of Seymour Price along with all testimony received and proceedings held before him be ordered void and held for naught.

In its order of September 6, 1974 the trial court ruled *inter alia,* that (1) "the exceptions of the defendants to the said Master's Report are sustained and the said Report is held for naught"; and (2) "the motion of defendant Glen Ellyn Corporation for a trial de novo is sustained and this cause shall be retried, a new trial being hereby ordered." This appeal by leave of court follows from that order.

OPINION

It appears clear from Gleny Ellyn's motion and the order of the court that the grant of the trial de novo was predicated on the failure of Glen Ellyn to receive notice of the original hearing at which testimony was initially received prior to the abolishment of the office of master in chancery and, further, for failure to give notice to Glen Ellyn of the proceedings before Judge Lupe on December 3, 1965. Glen Ellyn states this to be the basis of the trial judge's order of September 6, 1974, and supports the trial court's ruling by noting that the remedy for a failure to serve notice has historically been the rereferral of the cause to the master, citing *Whiteside v. Pulliam,* 25 Ill. 257. However, it states rereferral of the cause to the master was impossible due to the abolition of that office, and therefore the grant of the trial de novo was proper.

While not disputing the power of a chancellor to rerefer a cause to the master under the procedure prior to the constitutional amendment abolishing that office, plaintiff argues that Glen Ellyn waived any failure of notice of the intial meeting by its participation in all other hearings. It is undisputed that Glen Ellyn did participate in the totality of the proceedings following the December 3, 1965, order extending the office of the master to complete this matter and did, in fact, take part in the former appeal of this cause. Thus, its contention that it didn't receive

notice of the initial meeting or of the December 3, 1965, motion and order is not and cannot be considered as a complaint that it was not allowed to participate fully in the hearing and cross-examine witnesses, as was the objection in *Whiteside*. Here, all testimony received at the initial meeting on July 14, 1965, was reheard subsequently, and the master did in fact "start from the beginning" as he stated at the July 11, 1966, meeting. In fact, it is evident and was stated by Glen Ellyn's cocounsel at oral argument, that the initial meeting was, by agreement of the other parties, merely a swearing of the first witness for the purpose of granting the master the power "to conclude matters in which testimony has been received." Thus, we believe the force of Glen Ellyn's due process objection must be confined to the technical objection attacking the authority of the master to conduct the subsequent hearings.

■■ Jurisdiction is of two types; namely, jurisdiction of the subject matter and of the person. (14 Ill.L.&Pr. *Courts* § 11 (1968).) Defects in jurisdiction over the person may be waived (*Kelly v. Brown*, 310 Ill. 319, 141 N.E. 743); however, defects in subject matter jurisdiction may not be waived (*Klaren v. Board of Fire and Police Com'rs of Village of Westmont*, 99 Ill.App.2d 356, 240 N.E.2d 535; *In Re Annexation to Village of Palatine*, 84 Ill.App.2d 6, 228 N.E.2d 117), because the parties by their consent cannot confer upon a court a power which it does not possess. (*Meyer v. Meyer*, 328 Ill.App. 408, 66 N.E.2d 457; 14 Ill.L.&Pr. *Courts* § 19 (1968).) Necessarily incident to the above rule is the fact that a party may waive a defect in jurisdiction over the person by proceeding without objection. *People v. Securities Discount Corp.*, 361 Ill. 551, 198 N.E. 681.

■■ A master in chancery in Illinois is merely a ministerial officer of the court (*Bolter v. Kozlowski*, 211 Ill. 79, 71 N.E. 858; *Hards v. Burton*, 79 Ill. 504; 7 Ill.L.&Pr. *Chancery* § 381 (1964)), whose powers are derived from and confined to the order or decree of reference issued by the court. *Hards v. Burton; Preston v. Hodgen*, 50 Ill. 56; *Richton v. Richton*, 45 Ill.App.2d 128, 195 N.E.2d 265.

We believe it evident that the court had personal jurisdiction over the defendants at all times during these proceedings. This personal jurisdiction was continued before the court's ministerial officer, the master. Thus, the only question here relates to the issue of subject matter jurisdiction; *i.e.*, the authority of the master to conduct the hearing.

■■ In this regard, we note that in his order of December 3, 1965, the original chancellor, Judge Lupe, found that testimony had been taken on July 14, 1965, before the master; *i.e.*, that proceedings had commenced and, therefore, that authority existed under the Transition Schedule to continue the term of the master. The parties do not dispute the

fact that preliminary questions were asked of a witness before the master prior to the time his term of office expired. We see no requirement in the Schedule, as suggested by Glen Ellyn, that "substantial" testimony must be taken. Thus, we are of the opinion that the trial judge had the authority to allow the master to conclude this matter and that the failure of one party to receive notice of that first hearing where testimony was taken does not negate this authority.

■■ In any event, assuming this authority was nonexistent, we believe the master's appointment was voidable and not void, and that any objection to the master's authority should have been made by Glen Ellyn at the outset, before the master commenced the hearings. A somewhat similar argument was presented in *Phillips v. O'Connell*, 331 Ill.App. 511, 73 N.E.2d 864. There, a belated objection was made to the reference by a chancellor to a special commissioner where there existed no authority for such a referral. The court held that the order was not void; but merely voidable, and such error was waived by proceeding with the hearing, stating at page 528:

> "In the instant case defendants at no time objected to the reference to the special commissioner upon the ground they now urge. The sole objection raised by them was that the case was improperly on the chancery side of the court and that they were entitled to have it transferred to the law side of the court for a jury trial. They had made a like objection when a previous order of reference to one of the regular masters in chancery of the court was entered. They participated actively in the hearings before the special commissioner, offered evidence before him, and made no objection to his competency. * * * If defendants' contention that the reference to the special commissioner and his report were void proceedings is sound, they have the right to raise the point at any time. If, on the other hand, the order of reference and the special commissioner's report were not void proceedings but merely voidable proceedings, the instant contention of defendants is without merit."

The *Phillips* court concluded that the improper reference resulted in a proceeding voidable at most, that the trial court had jurisdiction of the subject matter and the parties, and that the objection was waived by participation in the hearings.

Likewise, in *Andrulis v. First National Bank*, 4 Ill.App.3d 436, 281 N.E.2d 417, it was objected that the master in chancery was not a master at the time of the reference; that no order continuing his office was entered; and that said office was abolished on the effective date of the amendment to the 1870 Constitution. It was contended the master had

no authority to conduct the hearings and his report should be held for naught. It was held in *Andrulis* that the master was at least a de facto officer "whose acts are as valid and binding where they concern the rights of third persons or the public as though he was a *de jure* officer." (4 Ill.App.3d 436, 439.) Further, the court held that title to such office could only be decided in a direct proceeding brought for that purpose.

In 58 Am.Jur.2d *Notice* § 8, at 491 (1971) the following appears:

"Means of knowledge and knowledge itself are, in legal effect, the same thing where there is enough to put a party on inquiry. Knowledge which one has or ought to have under the circumstances is imputed to him. When a party has information or knowledge of certain extraneous facts which of themselves do not amount to, nor tend to show, an actual notice, but which are sufficient to put a reasonably prudent man upon inquiry respecting a conflicting interest, claim, or right, and the circumstances are such that the inquiry, if made and followed up with reasonable care and diligence, would lead to the discovery of the truth, to a knowledge of the interest, claim, or right which really exists, put a reasonably prudent man upon an inquiry respecting a conflicting interest, claim, or right. In other words, whatever fairly puts a person on inquiry is sufficient notice where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained." (Footnotes omitted.)

Here, Glen Ellyn actively participated for a number of years in the hearings of this matter but made no objection to the authority of the master. It knew or was charged with knowledge of the amendment to the 1870 Constitution abolishing the office of master in chancery. It knew or was charged with knowledge that the master could remain in office only until the expiration of his term and that, to continue thereafter, some initial testimony must have been taken and an order of court entered. It made no inquiry in this regard and chose to proceed with hearings before the master. Only after an appeal and the master's final ruling adverse to it does Glen Ellyn now object to the master's authority. Clearly, this comes too late.

Furthermore, we believe the question of the master's jurisdiction is res judicata. As stated in *People ex rel. Modern Woodmen of America v. Circuit Court of Washington County*, 347 Ill. 34, 46-47, 179 N.E. 441:

"The rule concerning *res judicata* embraces not only what was actually determined in the former case between the same parties or their privies, but *it extends to any other matter properly involved which might have been raised and determined and to all*

*grounds of recovery or defense which might have been presented.* (*Phelps v. City of Chicago*, 331 Ill. 80; *People v. Harrison*, 253 id. 625; *Godschalck v. Weber*, 247 id. 269.)" (Emphasis added.)

We note that in our former opinion, we addressed the issue of the "continuing jurisdiction" of Master Price to rule on the objections presented. We stated that an order was entered on December 3, 1965, finding that testimony had been received prior thereto by the master that, although his term of office would expire on December 6, 1965, justice required that he continue to act as master thereafter to conclude the matter referred to him. The issue was expressly stated then by this court to be "whether Associate Judge Price has jurisdiction to finish this case in the capacity of master in chancery." (5 Ill.App.3d 1, 3.) We held that " * * * Judge Price would have continuing jurisdiction as a master to preside over the remainder of this case * * *." (5 Ill.App.3d 1, 4.) Necessarily incident to our determination that he had such "continuing jurisdiction" was the basic tenet that he had jurisdiction initially. Any challenge to such initial jurisdiction should have been made at that time. As stated in *People ex rel. Modern Woodmen of America*, the doctrine of res judicata extends to any matter "properly involved which might have been raised and determined and to all grounds of recovery or defense which might have been presented." The law does not favor piece-meal litigation. This matter should properly have been presented on the former appeal, and our ruling on the issue of jurisdiction makes the question res judicata. It may not again be put in issue.

For the reasons hereinabove stated, that part of the order granting a trial de novo and that part holding the master's report for naught are reversed and the cause remanded.

As to the posture of this case on remand, we note that the trial court sustained all the exceptions to the master's report. In *Kavanaugh v. Washburn*, 387 Ill. 204, 56 N.E.2d 420, the court stated at pages 209-11:

"The only matter open for review is the propriety of the trial court's order allowing a new trial. Matters outside the scope of the motion for new trial are not a proper subject of review. *The Appellate Court can not, by the order it enters, undertake to determine the rights of the parties on the merits.* The order that is entered by the Appellate Court must be limited to an affirmance or reversal of the order of the trial court. In either event, the cause should be remanded with directions to proceed in due course. * * * If the Appellate Court reverses the order allowing a new trial, its power to remand is inherent but its authority to give directions is circumscribed by the scope of its review. *When the cause is redocketed on an order of reversal and remand-*

*ment, it should leave the parties in the same position as they were before the trial court ordered a new trial.*

\* \* \* If, on appeal, the Appellate Court reverses the order allowing a new trial, it must go back to the trial court to proceed in due course, *which includes the entering of a judgment on the verdict."* (Emphasis added.)

Therefore, since we are reversing and remanding, the parties are left in the same position as they were before the trial court ordered a new trial. The ruling sustaining the exceptions to the master's report stands, and the trial court is directed to enter judgment.

Necessarily, therefore, the portion of the order transferring the case for reassignment is set aside.

■■ Further, we observe that the trial court's order approves the fees and charges of the master and taxes them as costs—one-half to be paid by plaintiff and one-half to be paid by defendants. As a general rule, where the court fixes a master's fee, it may then be taxed as other costs. (*German-American Savings, Loan & Building Association v. Trainor*, 293 Ill. 483, 127 N.E. 719; 14 Ill.L.&Pr. *Costs* § 53 (1968).) In chancery, the court has the discretion to tax costs as it sees fit according to the equitable principles applicable to the facts of the particular case. (*Schuringa v. City of Chicago*, 30 Ill.2d 504, 198 N.E.2d 326, *cert. denied*, 379 U.S. 964, 13 L.Ed.2d 558; 85 S.Ct. 655; 14 Ill.L.&Pr. *Costs* § 6 (1968).) In light of the fact that this cause is being remanded, we will reverse that portion of the court's order allocating costs so that the trial judge, at the conclusion of this matter, may examine the equities then presented and make his ruling based thereon.

We note also that Savage's motion to disqualify the law firm of Winston & Strawn from representing plaintiff is still pending in the trial court.

The order granting a trial de novo and holding the master's report for naught is reversed and this cause remanded with directions to enter judgment and for further proceedings consistent with the views and holdings expressed herein.

Reversed and remanded with directions.

BARRETT, P. J., and DRUCKER, J., concur.