GRETCHEN L. LAMBERTON v. HENRY M. LAMBERTON, JR.[1]

June 10, 1949.

No. 34,900.

[1] Reported in 38 N. W. (2d) 72.

*Henry M. Lamberton, Jr. (pro se)* and *Sawyer & Gurnee,* for appellant.

*Doherty, Rumble, Butler & Mitchell,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Plaintiff and defendant were divorced under the laws of Minnesota in 1944, and plaintiff was awarded $175 per month alimony for the exclusive use and benefit of herself and a minor child, who became of legal age on July 23, 1948. By way of further alimony and not as a division of property (no division of property being made at the time of the decree), plaintiff was also awarded certain household furniture and an additional $45 per month alimony in the event that she should vacate the premises in which she was living at the time of the decree. According to plaintiff's affidavit, she notified defendant that she had vacated the premises on August 1, 1944; that after the entry of the decree on July 26, 1944, he paid her $220 monthly until November 1, 1947, when he voluntarily increased the payments to $250 per month.

In May 1948, plaintiff moved to amend and modify the original divorce decree so as to increase the alimony and support money for

the minor child and for other relief. In October 1948, the district court ordered the alimony to plaintiff increased to $500 per month commencing June 1, 1948, to continue until further order of the court. From this order defendant appeals, and he makes the following assignments of error:

(1) That the court erred in fixing the amount of the award in the amended order at $500 a month, since, as he contends, in order to be proper under the statute, such award must be based on an income of at least $18,000 a year and such an income is not justified by the evidence or the facts;

(2) That the court erred in taking into consideration, or being influenced by, the amount of the corpus and income of a trust created by the last will and testament of defendant's father, which defendant contends must have been the case, judging from the amount of monthly alimony awarded in the order.

M. S. A. 518.22, which governs the award of alimony allowances in this state, so far as pertinent here, provides:

"* * * The court may also, in the cases provided for in this section, decree to the wife such alimony out of the estate, earnings, and income of the husband as it may deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties, and other circumstances of the case, and may by its decree make the same a specific lien upon any specified parcels of his real estate, or authorize its enforcement by execution against his property, real and personal; but the aggregate award and allowance made to the wife from the estate of the husband under this section shall not in any case exceed in present value one-third of the personal estate, earnings, and income of the husband, and one-third in value of his real estate."

The principal question for our consideration is whether there was an abuse of discretion on the part of the trial court in making the order appealed from.

"It is a fundamental rule of appellate procedure that the determination of a trial court of a matter resting in its discretion

will not be reversed on appeal except for a clear abuse of discretion. This discretionary power of the trial court must be exercised judicially, with close regard to all the facts of the particular case and in furtherance of justice. * * * In determining whether abuse of discretion is shown the supreme court construes the findings of the trial court in the light of the record." 1 Dunnell, Dig. § 399.

In Baker v. Baker, 224 Minn. 117, 120, 28 N. W. (2d) 164, 167, this court said:

"* * * Obviously, as an appellate court, we cannot determine issues of fact *de novo*, but must accept any awards for alimony and for the adjudication of property rights unless, in the light of the evidence as a whole, it appears that the trial court has abused its discretion."

Defendant insists that there is no evidence to support a finding that his income is in excess of $500 per month, if it is that much. His profession is that of an attorney at law. From his testimony and affidavit, we review his claim of earnings from his law practice over a period of years.

For 1941, about $4,800; 1942, gross receipts, $4,889.35, office expense, $4,966.75; 1943, loss $1,600; 1944, no showing of earnings; 1945, $5,000 to apply on attorney's fees in the probating of his father's estate (also $13,333.33 as a beneficiary of his father's life insurance); 1946, $20,535.79, consisting of $125 fees in four cases and a balance of $22,500 as a fee for probating his father's estate, less the loss in operating his office; 1947, gross income from law practice, $8,911.10, with a net income from law practice, after business deductions, of $3,305.81, together with $284.75 from dividends; 1948, to May 14, gross income from law practice, $2,105.56. Defendant further states in his affidavit "that the law office account of the deponent does not exceed $100.00 and that his personal account is the sum of $107.69; that the deponent's outstanding indebtedness at the present time [May 14, 1948] is approximately the sum of $1,500.00; that the ordinary and reasonable operating expense of said law office is the sum of $250.00 per month. * * * that deponent's

entire personal estate, after deducting liabilities is of the total value, in round figures, of $3,000.00."

Plaintiff said in her affidavit that at the time of the Minnesota divorce action, and for some time prior thereto, defendant had ceased practicing his profession, but that shortly after the entry of the decree he resumed practice and was so engaged at the date of her affidavit, January 22, 1948. It was her *belief* that in 1945 and 1946 defendant earned from his profession at least $15,000 for each of those years and that his income from his profession in 1947 was as great as in 1945 or 1946, if not greater. She further stated that defendant's father died in 1945 and that on August 12, 1946, an inventory was filed in his estate amounting to $2,884,459.98.

Prior to the divorce in 1944 and the death of defendant's father in 1945, defendant and his family maintained a standard of living for some years commensurate with an income of about $20,000 per year. However, plaintiff makes no showing that defendant has continued to live according to this standard since his father's death. Defendant claims that this standard of living was maintained only by going into debt to his father, although there is no showing that these loans were ever repaid or treated as loans by his father. Defendant, in his affidavit opposing plaintiff's motion, changes his position and states that these "transfers" of money were made by his father to aid him in retiring other debts. He states, however, in a letter to his sons dated March 14, 1942, "that the support and upkeep of this home has swallowed up every penny of my earnings, which have been considerable, for the past twenty-two years."

Defendant claims in his affidavit that he has not received any income whatever from the trust fund hereinafter discussed and that the unused portion of the income therefrom, after deducting the allowance for his mother as provided by his father's will, has been returned to and invested as a part of the principal of the trust. Plaintiff made no showing to the contrary.

In Loth v. Loth, 227 Minn. 387, 398, 35 N. W. (2d) 542, 549, we said:

"We do not agree with defendant's contention that for purposes of computing allowances to be awarded to the wife his income should be taken as the average for a period of six years rather than the income for the year preceding the award. * * * Absent statute, the rule is as stated in 19 C. J., Divorce, § 589:

\* \* \* \* \*

"It is, of course, pertinent to inquire as to the amount earned in other years to determine whether, because of extraordinary reasons, the income for a particular year is no guide."

It will be observed from the testimony and conflicting affidavits of plaintiff and defendant that the trial court had various figures to consider as defendant's income, both for 1947, the year preceding the filing of the order involved herein, and for 1945 and 1946. For example, defendant claims that his gross income for 1947 from the practice of law was $8,911.10, leaving $3,305.81 net after business deductions, plus $284.75 received from dividends. It was plaintiff's belief that his income for 1947 was as much as in 1945 or 1946, if not more. He admits that in 1945 he received $5,000 attorney's fees in connection with probating his father's estate and $13,333.33 as a beneficiary of his father's life insurance, and that in 1946 his income was $20,535.79, which was the year he received the balance of the fee for closing his father's estate.

Defendant argues that in increasing the alimony to $500 a month the trial court must have been influenced by the amount of the corpus and income of the trust created by the last will and testament of his father.

In this respect, it appears from the record that at the time of the death of defendant's father on July 22, 1945, he left a last will and testament providing for two trust funds, one for the benefit of decedent's wife and daughter, referred to as the Sweatt trust, and the other for the benefit of decedent's wife and defendant, referred to as the Lamberton trust. The will further provided that so long as decedent's wife should live each of the trust funds created by the will would be held primarily for her use and benefit, and that

the trustee should pay to decedent's wife from each of said trust funds in equal shares such sums as they deemed appropriate for her support, maintenance, comfort, and happiness. It further provided that the remainder of the net annual income from the Sweatt trust, after the payments had been made to decedent's wife, should be paid to decedent's daughter or applied for her use and benefit, or accumulated, all as the trustees of the Sweatt trust in their absolute and uncontrolled discretion from time to time should elect. It also provided that the remainder of the net annual income from the Lamberton trust, after payments had been made to decedent's wife, should be paid to decedent's son, or applied for his use and benefit, or accumulated, all as the trustees in their absolute and uncontrolled discretion from time to time should elect.

Defendant and his brother-in-law, Charles B. Sweatt (husband of decedent's daughter), were named as coexecutors in the last will and testament of decedent's father. Defendant and the First National Bank of Winona were named as cotrustees of the Sweatt trust, and Charles B. Sweatt and the same bank were named as cotrustees of the Lamberton trust. The will authorized defendant and Mr. Sweatt, or their successors, at any time in their joint and uncontrolled discretion, to remove the bank as corporate trustee in both trusts, with the power and authority to appoint a successor corporate trustee and fix its compensation. It appears that the amount of each trust at the time of the hearing on the motion was approximately $700,000.

In Erickson v. Erickson, 197 Minn. 71, 266 N. W. 161, 267 N. W. 426, plaintiff brought an action to have certain judgments and claims in her favor and against her former husband for alimony and support money impressed as a lien on and paid out of the interest of her former husband in a trust created by the last will of his deceased father. We held in that case that the trust created was a valid spendthrift trust; that both the principal and interest were free from the claims of creditors and were protected in transmission *until actually paid over to the beneficiary;* and that this applied to

obligations for alimony and support money. With reference to this the court said (197 Minn. 78, 266 N. W. 164):

"Some cases hold that obligations for alimony and support money transcend the provisions of a spendthrift trust and may thwart spendthrift trust provisions by the settlor. Restatement, Trusts, Am. Law Inst. so states the law. We are not impressed with the soundness of that doctrine. In the case at bar it would be an attempt judicially to interpret into the language of the donor provisions contrary to his actual intent as expressed. When unrestrained by statute, it is the intent of the donor, not the character of the donee's obligation, which controls the availability and disposition of his gift. The donee's obligation to pay alimony or support money, paramount though it may be, should not, in our opinion, transcend the right of the donor to do as he pleases with his own property and to choose the object of his bounty."

It is clear that the income from this trust fund cannot be considered in setting the amount of the alimony award until it is shown that defendant is actually receiving the income, which plaintiff failed to show. In Loth v. Loth, 227 Minn. 387, 35 N. W. (2d) 542, *supra*, we said that where the value of property or a right is not shown in a litigation it will be considered to be only nominal, citing Sime v. Jensen, 213 Minn. 476, 7 N. W. (2d) 325; Geo. Benz & Sons v. Hassie, 208 Minn. 118, 293 N. W. 133; Whittaker v. Stangvick, 100 Minn. 386, 111 N. W. 295, 10 L.R.A.(N.S.) 921, 117 A. S. R. 703, 10 Ann. Cas. 528; 2 Dunnell, Dig. & Supp. § 2522; 15 Am. Jur., Damages, §§ 5 to 8; 25 C. J. S., Damages, § 9. It would appear that the corpus of the Lamberton trust cannot be considered here, unless its present value to defendant's estate is proved, which was not done.

Under § 518.22, it was within the discretion of the trial court to decree to plaintiff "such alimony out of the estate, earnings, and income" of defendant, provided the aggregate award and allowance made to her did not "in any case exceed in present value one-third

of the personal estate, earnings, and income of the husband, and one-third in value of his real estate."

We have no way of knowing whether or not the trial court considered matters extraneous to the record in setting this award. However, the review in this court must be confined solely to the record. 1 Dunnell, Dig. & Supp. § 386. On review of the record, we can find no evidence of probative value that defendant's personal estate, earnings, and income amounted to $18,000 or more during the year previous to the time plaintiff's motion was made in May 1948. We therefore hold that from the record there appears to be such an abuse of discretion as to justify our reversing the order of the trial court.

Respondent is allowed $750 attorneys' fees and costs and disbursements in this court.

Reversed.

