**Deanna L. Keefer, a/k/a Deanna L. DeMarco, Plaintiff-Appellee, v. Edward W. Keefer, Defendant-Appellant.**

Gen. No. 68–122.

Second District.

March 6, 1969.

David L. Martenson, of Rockford, for appellant.

Maynard and Brassfield, of Rockford, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant prosecutes this appeal from an order of the Circuit Court of Winnebago County that denied his motion to "modify the rights of visitation" of his former wife with their two children.

On November 4, 1963, the plaintiff, Deanna L. Keefer, was granted a divorce from Edward W. Keefer. By the terms of the divorce decree, Edward W. Keefer was given custody of the two minor children of the parties, Edward W. Keefer, Jr. and Gary A. Keefer, and Deanna was granted "reasonable visitation privileges." By a subsequent order dated October 17, 1967, the visitation privileges (although described in the order as "temporary custody") of Deanna Keefer were defined with greater precision, in part as follows:

> "1. That the plaintiff, Deanna L. Keefer, have the right to pick up her minor son, Gary A. Keefer, from the home of the defendant, Edward W. Keefer, at 4:00 o'clock p. m. on Friday of the first, second and third weeks of each month, and to have the temporary custody of said minor child until 7:00 o'clock p. m. of the following Sunday at which time said minor child is to be returned to the home of the defendant.

> ". . .

> "3. That the plaintiff, Deanna L. Keefer, shall have the right of visitation with her minor son, Edward W. Keefer, Jr., at the home of the defendant at or about the hour of 4:00 o'clock p. m. on Friday of the first, second and third weeks of each month and at or about the hour of 7:00 o'clock p. m. on Sunday of the first, second and third weeks of each month, or at other places by mutual agreement between herself and her said son."

The defendant's motion to modify these visitation privileges, filed April 5, 1968, alleged that since the or-

der of October 17, 1967, "the school grades of both children have turned from excellent to poor, the children have been forced by Deanna L. Keefer to associate with undesirable syndicate hoodlums, and other unfortunate and undesirable results have been obtained." The motion asked for a full hearing and an order "completely terminating" the plaintiff's rights of visitation until she "discontinues her association with parties whose names, addresses and records shall be presented at the time of hearing." Edward Jr. and Gary were 9 and 7 years old, respectively, at the time the motion was filed.

Deanna Keefer was called as an adverse witness pursuant to section 60 of the Civil Practice Act by the defendant at the hearing held April 30, 1968. She testified that she resided in two locations, an apartment in Forest Park and in a 7-bedroom home owned by a Sam Samarco in Chicago. Deanna had a separate bedroom in the Chicago home and cared for Samarco's mother until her death in July, 1967. Samarco, his sister, brother-in-law and their four children also lived at the home. Deanna's only source of income until her own father died in June, 1967, was from Samarco for the care of his mother. She admitted that the mailbox on her Forest Park apartment had the name DeMarco on it but denied that Samarco ever used the name DeMarco.

Deanna further testified that she visited with her sons regularly after the divorce and that they frequently stayed with her at both residences during her visitation periods. On one occasion Samarco stayed overnight in the apartment with Gary and Deanna but Samarco slept by himself. Deanna said she ate at "Mr. Don's," a restaurant near her apartment, and knew the owner, Donald Maggio. She occasionally took Gary with her to eat at "Mr. Don's" and although she knew that Samarco occasionally ate there she did not know how often. She denied any knowledge of Samarco's employment or source of income.

Edward Keefer testified that his children resided with his parents in Rockford until his remarriage in January, 1967, and with him, his second wife and her 3 children thereafter. He stated that Deanna visited the boys infrequently until she learned of his remarriage on March 21, 1967, but took Gary with her on weekends regularly thereafter. Keefer and his mother both testified that prior to March 21, 1967, Gary had never lied or stolen but that after that date he lied to his teachers, was disrespectful of others, and, on one occasion, attempted to steal a bag of candy.

Three private investigators employed by the defendant also testified. William Davern testified that on February 28, 1967, he arrived in front of Deanna's apartment at 5:50 a. m. and that no one entered or left until she came out with Samarco at 11:50 a. m. George Elliott stated that he observed Deanna take Gary into "Mr. Don's" on two occasions and that they left shortly thereafter with Samarco and drove to the home in Chicago for the night. Elliott also testified that he frequently observed Samarco around "Mr. Don's." The third investigator, George Larson, was not permitted to testify from the Chicago Crime Commission report as to the reputed criminal background of Donald Maggio and "Mr. Don's" but a certified court order from Cook County was admitted that dislcosed that the liquor license of "Mr. Don's" had been revoked for a gambling violation.

At the conclusion of this evidence, the trial court denied the defendant's motion and, in effect, confirmed the visitation privileges provided in the prior order of October 17, 1967. It is apparent that the defendant has waived his objections to the visitation privileges afforded Deanna Keefer with Edward Jr., since there is nothing in his brief and abstract or the record in regard to that question. The defendant does contend that the trial court was unmindful of its power to modify visitation privileges previously established in the interest of the welfare of

the child and improperly prohibited his cross-examination of Deanna Keefer in regard to her knowledge of Samarco's previous activities.

■ ■ The trial court has broad discretion to adjust the privileges of visitation, a discretion to be exercised only in the interest of the children and not as a punishment or reward to either parent. Malone v. Malone, 5 Ill App2d 425, 428, 126 NE2d 505. The privilege is founded on the belief that it is for the welfare of the child that he have a healthy and close relationship with both of his parents. However, a court may amend visitation privileges previously established, or, in extreme cases, temporarily deny them altogether if the privilege is abused. Malone v. Malone, ibid.

■ ■ It was incumbent on the defendant to show by competent evidence that it was in the best interests of Gary to change the visitation rights provided in the order of October 17, 1967. We feel that he failed to sustain that burden.

There was no evidence that Gary's school grades had suffered, as charged by the defendant, or that he was forced to consort with hoodlums. The evidence of his decline since March 17, 1967, was scarcely alarming and not necessarily connected to his association with his mother. Although there was some evidence of irregularity in the private life of Deanna Keefer, there is no proof that her son is a witness to any immorality or subject to corrupting influences. Under the circumstances, the trial court was well within its discretionary bounds when it denied the defendant's motion.

For the reasons given, the order of the Circuit Court of Winnebago County will be affirmed.

Affirmed.

MORAN, P. J. and SEIDENFELD, J., concur.