STACEY K. SCHWARTZ, Plaintiff-Appellee, *v.* MICHAEL R. SCHWARTZ, Defendant-Appellant.

First District (2nd Division)   No. 61047

Opinion filed May 18, 1976.

Saul Foos, of Foos & Sexner, Ltd., of Chicago (Gary E. Dienstag, of Haas & Dienstag, Ltd., of counsel), for appellant.

Allan L. Blair, of Wexler and Wexler, of Chicago, for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

In his appeal of a divorce granted to plaintiff based upon the grounds of mental cruelty, defendant urges on review error by the trial court in the award of alimony in gross, child support, and attorney's fees. The following issues are presented for review: (i) whether the trial court improperly admitted documentary evidence concerning the contents and provisions for distribution of defendant's deceased father's estate, and improperly relied on such evidence in making its findings; and (ii) whether the trial court's award of alimony in gross, child support, and attorney's fees was based on speculative evidence as to future income, and was therefore improper and against the manifest weight of the evidence.

Only those facts necessary to the limited issues on review will be stated. The parties married in Chicago in September of 1967 and lived together until May 24, 1973. When first married, defendant was working for Dunkin's Donuts of America and plaintiff was director of public relations for Patricia Stevens. Defendant asserted he was earning $100 a week at that time and plaintiff $150 a week, whereas plaintiff contended defendant was at that time earning $150 a week and she was earning $130 a week.

About six months after they were married, they moved to Florida to be with defendant's father who had become ill. Plaintiff testified they had approximately $3,000 to $4,000 between them when they moved to Florida. Although they lived there between four to six months, neither party worked. Shortly thereafter, defendant's father died and defendant received about $125,000 from a life insurance policy. About four to five months after the death, plaintiff's father came to Florida and persuaded them to return to Chicago and offered to sell defendant a store. Defendant purchased the store, Recreation Specialties, Inc., for $11,000, taken out of the $125,000. Defendant sold pool tables and related products at retail in this store from 1969 to April 30, 1974, at which time he sold the business to Norton Investments for between $4,500 and $5,000.

In addition to purchasing the store out of the insurance policy proceeds, the parties went to Europe three times, they bought several automobiles, defendant gave plaintiff a $1,000 a month allowance, and he used $8,000 as a down payment on a townhouse into which they moved shortly after returning from Florida, and he also used $15,000 to furnish the townhouse and $4,000 to buy a mink coat for plaintiff. The policy proceeds were also utilized, in combination with the money received from selling Recreation Specialties, to make the temporary alimony and child support payments of $1,000 a month ordered prior to trial by the circuit court. Defendant testified that at the time of the trial, nothing remained of the $125,000.

The evidence indicated that, as the $125,000 was almost gone, plaintiff

became angry and suggested defendant borrow money from his mother temporarily. Defendant also asserted plaintiff knew the income on which they were living was coming from the policy proceeds rather than from the meager profits of the business. Defendant also testified plaintiff had only earned minimal income during the marriage in her infrequent job as a lecturer for Weight Watchers. Plaintiff asserted she had no idea what defendant earned in Recreation Specialties but did know defendant gave her everything he made. She agreed that she worked "sporadically" for about a year and a half at Weight Watchers, and admitted she contributed no money toward the townhouse.

Defendant testified he was, at the time of trial, living in Florida and employed as a sales representative at Jordan Industries, Inc., from which job he netted, after travel expenses, $187.20 a month. He also confirmed that he received $2,163 a year in interest income and $200 a month from Aetna Life Insurance Co. All of this income was, he asserted, subject to income tax.

Defendant's accountant testified as to Federal corporate income tax returns for Recreation Specialties, plaintiff's and defendant's joint Federal income tax returns for 1969 to 1972, and defendant's individual Federal income tax return for 1973. These returns were also admitted as exhibits. This testimony indicated that for the following years the gross income from all sources for both parties was:

| Year | Gross Income |
|------|-------------|
| 1969 | $ 9,996 |
| 1970 | 5,446 |
| 1971 | 5,931 |
| 1972 | 9,657 |
| 1973 | 10,208 |

Plaintiff alleged she had no outside income at the time of the trial and was prevented from working because of her small daughter at home. She contended her monthly expenses were as follows:

| | |
|---|---|
| mortgage on townhouse | $298 |
| ($26,000 remaining at time of trial) | |
| maintenance for townhouse | 46 |
| live-in helper | 120 |
| telephone | 40 to 45 |
| electricty and gas | 40 |
| drugs | 50 |
| cleaning woman | 152 |
| food | 300 |

Such expenses, exclusive of car insurance of $300 a year, total $1,046 to $1,051 a month.

In the pleadings, defendant admitted having acquired assets during the course of the marriage including trusts totalling $200,000. Prior to trial, plaintiff also filed a motion to produce documents including all original trust agreements of which defendant was a beneficiary or in which he had a beneficial interest. When defendant was being examined as a section 60 (Ill. Rev. Stat. 1973, ch. 110, par. 60) witness, he asserted his father's estate had been in probate for about four years and that he believed it was no longer being probated. He also contended he knew one of the trusts created by that estate, of which he was beneficiary, was worth about $50,000, and stated he believed he was to receive one-quarter of a second trust worth $200,000 at age 35, another quarter at age 40, another at age 45, and another at age 50. In the course of this examination, defendant's counsel objected to questions regarding any estate, absent the essential documents relevant to that estate. Defendant was born on June 4, 1941, and would be 35 on June 4, 1976.

After defendant had presented his case, plaintiff asserted in rebuttal testimony she had received from defendant's sister an inventory of defendant's father's estate, defendant's father's last will and testament and a petition for construction of the will, all of which she offered for introduction into evidence. She contended she had told defendant she had received the documents and that defendant had told her to leave him alone. Defendant's counsel objected to the introduction of these documents on grounds no proper foundation had been laid. The judge overruled these objections and admitted these three exhibits.

In closing arguments, defense counsel argued defendant's net income per week, including insurance and trust interest income was $244.89. Though admitting the existence of the trusts, he asserted defendant had absolutely no control over them and thus that the court had no jurisdiction as to the trusts.

After the court made its findings of mental cruelty and lack of condonation, it admitted it did not know the current assets of the trusts in Florida and stated it was considering lump sum alimony because defendant was working and probably living in Florida (both of which defendant had admitted.) Ordering defendant to produce information on the trusts, the court subsequently admitted into evidence a letter from the Barnett Bank of Miami Beach—apparently the trustee—to a law firm in Miami stating the approximate market value of the two trusts of which defendant was beneficiary to be $42,833.77 and $245,023.65 as of August 2, 1974. The judge also noted that defendant, in his cover letter accompanying the aforementioned letter submitted to the judge, had

stated that in submitting the letter he was not admitting the authority of the court to make any judgment concerning the trusts.

At this hearing plaintiff's counsel submitted a petition for attorney's fees to be assessed against defendant. In this petition, 49 of the 149 hours allegedly devoted to this case are listed separately in the increments of 1, 2, and 3 hours with no listing less than an hour. The remaining 100 hours are included under "[m]iscellaneous telephone calls and conferences with parties and attorneys not dictated, research and other conferences." After stating his in-court and out-of-court rate and the total hours applied to each, plaintiff's trial attorney requested fees totalling $8,025.

The court ordered that plaintiff be given the townhouse, defendant pay all the daughter's dental, medical and extraordinary doctor's expenses, and that he be responsible for the daughter's college education, all debts, taxes and obligations arising from the marriage, and keep up premiums on a life insurance policy which he was to deliver to plaintiff and of which the daughter was to be the beneficiary.

The defendant contested the following portions of the order: (i) Alimony in gross was granted plaintiff in the amount of $38,000, because the parties were still young and in order to avoid future litigation which might prove difficult since defendant was living in Florida. This $38,000 is to be paid in installments of $100 a month until defendant reaches the age of 35. The order states that the entire sum is to be paid *before* the defendant reaches the age of 35 or sooner. (ii) Child support is to be paid at the rate of $100 a week and increased to $150 a week two years after the entry of the decree, September 12, 1974. The judge then stated he was aware of provisions which allowed defendant to invade the trusts, although the judge did not specify how he discovered these provisions. The court also granted plaintiff's petition for attorney's fees to the extent of $8,000.

I.

The first issue for resolution is whether the trial court improperly admitted documentary evidence concerning the defendant's deceased father's estate and improperly relied upon such evidence in making its findings. Defendant contends the admission of the documents (described below) allegedly received by plaintiff from defendant's sister was improper since they were uncertified copies of purported records of defendant's father's estate. Plaintiff failed to respond to this contention. The law is clear in Illinois that only authenticated copies or originals of judicial records are admissible for the purposes of showing the content of those records. Ill. Rev. Stat. 1973, ch. 51, par. 55; *Dixon National Bank v. Neal* (1955), 5 Ill. 2d 328, 335, 125 N.E.2d 463; *Bailey v. Robison* (1908), 233 Ill. 614, 619, 84 N.E. 660.

Introduced into evidence in this case were (1) the purported copies of defendant's father's will, (2) an inventory of the assets of his estate, and (3) a petition for construction of the will. Section 84 of the Probate Act (Ill. Rev. Stat. 1973, ch. 3, par. 84) states as follows:

> "Will as Evidence.) A duly authenticated copy of a will and of the record of the probate thereof and a duly authenticated copy of the record of exemplification of a foreign will filed in the office of the clerk of the court of any county in this State are evidence in any court in this State."

■■ These three documents admitted into evidence are not authenticated by the clerk of the appropriate court in Dade County, Florida, and so far as we can determine from the record, there is no basis upon which they were admissible in the instant trial. It was not shown or apparent on the face of these three documents that the will had ever been admitted to probate, or that there had been compliance with the other provisions of section 84 as quoted above. The trial court, in ordering alimony in gross, noted that he was aware of provisions allowing the defendant to invade the Florida trusts in advance of the age of 35. We find nothing in the inadmissible documents or elsewhere in the record suggesting such provisions. In our opinion, it was error to consider these documents in resolving the issues before the trial court.

We therefore remand this case in order that the trial court may provide the parties an opportunity to present, if possible, properly authenticated copies of the relevant documents pertaining to defendant's father's estate.

## II.

Having determined that the trial court erred in considering improper evidence, we now consider whether the trial court's award to plaintiff of $38,000 alimony in gross, based on speculative evidence as to future income, was improper and against the manifest weight of the evidence. The parties have cited no Illinois cases to support their contentions on this issue, and our research has failed to uncover any. Defendant, however, cites two cases from other jurisdictions which are of particular interest. In *Merritt v. Merritt* (1934), 220 Cal. 85, 88, 29 P.2d 190, the California Supreme Court quoted from a Rhode Island case[1] where it was stated:

> " 'Alimony * * * should be ordered upon evidence that a husband himself has means of compliance or a capacity to acquire them if he makes reasonable efforts. * * * Alimony * * * where the husband is without property may not be based on the husband's hope of gratuities or the court's surmise that he will receive them.' "

In the present case, it does not appear that *any* efforts, much less

[1] *Boyden v. Boyden* (1929), 50 R.I. 326, 147 A. 621.

reasonable ones, would cure the uncertainty inherent in predicting in September 1974, in advance of defendant's actually reaching age 35 in June of 1976, that he will indeed receive the expected monies. As defendant correctly points out in his brief, many events, such as his death, apportionment to other beneficiaries and failure of investments could possible intervene to defeat or minimize defendant's interest. Regardless of these contingencies, under the order appealed from defendant would still be liable for payment of the award since under the prevailing authority in this State, alimony in gross awards are not modifiable. *Walters v. Walters* (1st Dist. 1950), 341 Ill. App. 561, 568, 94 N.E.2d 726, *aff'd*, 409 Ill. 298, 99 N.E.2d 342; *Chamberlin v. Chamberlin* (1st Dist. 1969), 119 Ill. App. 2d 295, 299, 256 N.E.2d 159.

■■ *Lamberton v. Lamberton* (1949), 229 Minn. 29, 38 N.W.2d 72, is a case cited by defendant which involved an alimony award based in part on the husband's expectancy under a spendthrift clause. The Minnesota Supreme Court stated that:

"It is clear that the income from this trust fund cannot be considered in setting the amount of the alimony award until it is shown that defendant is actually receiving the income, which plaintiff failed to show." 229 Minn. 29, 36.

The *Merritt* and *Lamberton* cases are applicable to and persuasive in our resolution of the present case. The fact that it is known that defendant is *expected* to receive the income from the trusts at a future date does not mean he *will* receive it. The entire idea behind allowing modification procedures in divorce law is to provide for legitimate changes in circumstances. This case appears to be a case where modification might be justified if and when defendant's financial circumstances change, based on the situation existing in June 1976. Therefore, the award of alimony in gross must be vacated and the question remanded for further consideration. *Cf. Lenz v. Lenz* (2d Dist. 1975), 33 Ill. App. 3d 568, 337 N.E.2d 195.

In determining the form of alimony which would be appropriate, the trial court on remand should consider the excellent analysis of the applicable law in *Seniuta v. Seniuta* (1st Dist. 1975), 31 Ill. App. 3d 408, 422-23, 334 N.E.2d 261.

### III.

■■ The next issue for our review is whether the award of child support—$100 per week—was excessive, against the manifest weight of the evidence and based on speculative evidence. For reasons already stated as to the alimony in gross, in our opinion, the order of the trial court which provided for an increase of child support two years after the entry of the decree to $150 per week is speculative and based on future income

which may never materialize. Also we believe that an award of $100 a week for a child two years old at the time of the entry of the decree is excessive and against the manifest weight of the evidence. We, therefore, vacate the award for child support and remand the question to the trial court for further consideration.

## IV.

■■ Finally, we turn to whether the award of $8,000 attorney's fees was excessive and against the manifest weight of the evidence. Our review of the record clearly indicates this was an ordinary divorce case, a prior attorney had filed the complaint and obtained the grant of temporary alimony, and that plaintiff's petition for attorney's fees itemizes 49 hours of work allegedly performed and 100 hours which is merely characterized as "[m]iscellaneous telephone calls and conferences with parties and attorneys not dictated, research and other conferences." The trial court did not conduct a hearing, although it indicated a hearing would be held. In our opinion the record does not support the $8,000 attorney's fees award. We are therefore vacating the award for attorney's fees and remand the matter for further hearing before the trial court.

## V.

We affirm those portions of the order and award of the circuit court of Cook County, including the grant of the townhouse to plaintiff, which were not contested on appeal. We vacate the trial court's award of alimony in gross, child support, and attorney's fees and remand to the trial court for such further hearing as necessary consistent with the views expressed herein.

Judgment affirmed in part; vacated in part and remanded.

STAMOS, P. J., and HAYES, J., concur.