PAMELA K. COONS, a/k/a Pamela K. Wilder, Petitioner-Appellee, *v.*
GEORGE W. WILDER, Respondent-Appellant.

Second District    No. 80-159

Opinion filed February 5, 1981.

Michael A. Cotteleer and Nancy McKeating Cotteleer, both of Wheaton, for appellant.

Ronald A. DaRosa, of Mountcastle & DaRosa, of Wheaton, for appellee.

Mr. JUSTICE NASH delivered the opinion of the court:

Respondent, cross-petitioner George W. Wilder, appeals from orders which were entered by the circuit court following enrollment of an out-of-state judgment dissolving his marriage to petitioner, Pamela K. Coons. He seeks reversal of orders modifying child support and visitation and the award of attorney's fees granted his former wife on grounds the court (1) lacked jursidiction over his person and the subject matter and (2) abused its discretion once it reached the merits.

The parties' marriage was dissolved in 1973 by a circuit court in the State of Oregon. Respondent was there ordered to pay $280 monthly child support and allowed visitation with his two children one weekend per month and for one week at either spring or Christmas vacation in alternating years. On November 21, 1977, Mrs. Coons, then an Illinois resident, petitioned the circuit court of Du Page County seeking to enroll the Oregon judgment and recover past due child support from respondent. Mr. Wilder answered and also filed a cross-petition requesting the court to extinguish his child support obligation and expand his visitation privileges to eight consecutive weeks each summer. Respondent maintained he was then unemployed and without substantial income and assets due to his enrollment in law school and an $18,000 investment loss. Lengthy summer visitation was sought by respondent because he had moved to Florida with his second wife, and this circumstance precluded monthly trips to see the children in Illinois.

The circuit court enrolled the Oregon judgment and determined respondent to be in arrears in his child support payments. Following the filing of numerous petitions concerning the arrearage and hearings thereon, the arrearage through November 1977 was ascertained and then paid by respondent. The hearing of respondent's visitation and child support modification petition filed in 1977 was postponed by the court and did not occur until August 1979; during the delay Mrs. Coons petitioned for increased child support. At the hearing on both parties' petitions, the unpaid arrearage from December 1977 to August 1979 was calculated. The amount owing was not reduced to judgment, however, as it had accrued during the period following the filing by respondent of his petition seeking extinguishment of his support responsibility which, if granted at the hearing, would revert back to December 1977, thereby eliminating the arrearage.

In the August 1979 hearing respondent testified he had recently been awarded his law degree and had passed the Florida bar examination, though he was not yet licensed to practice law in that State. He also disclosed his yearly gross earnings: $14,400 for the prelaw years 1972 to 1976; $1,400.00 for 1977; $6,600 for 1978; and $4,840 for the first eight

months of 1979. Respondent further testified he had been paying $100 monthly child support pursuant to a Florida court's Uniform Reciprocal Enforcement of Support Act (URESA) order. The evidence disclosed that Mrs. Coons' net income fluctuated between $260 and $350 per month during the period in question. Evidence was also presented that as of August 1979, respondent and his second wife owned a home and automobile, as did Mrs. Coons and her second husband. Respondent also had $2,000 on deposit in his checking account in August 1979.

The petitions of each party to modify child support were denied, but the court ordered that one-half of the $280 monthly support obligation of respondent was to abate from December 1977 until January 1, 1980, at which time his support obligation would resume at 1½ times the original $280 monthly sum until all abated payments were made up. Visitation was modified to three weeks each summer with alternating spring and Christmas vacations as provided in the original judgment. Respondent was ordered to pay $1,000 towards his former wife's attorney's fees on the basis that she had to initiate and litigate her enforcement claim against respondent for child support accruing between December 1977 and August 1979.

■■ ■ Respondent raises preliminary challenges to the circuit court's *in personam* and subject matter jurisdiction. He correctly relies on *Kulko v. California Superior Court* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690, in asserting that the due process clause of the fourteenth amendment operates as a limitation on the power of Illinois courts to modify sister State dissolution of marriage judgments so as to affect the rights of nonresident defendants lacking minimum contacts with this State. Respondent acknowledges he appeared generally in this matter, but maintains that he otherwise has had no contact with Illinois to support personal jurisdiction over him. This contention is clearly without merit as any defect in jurisdiction over his person was waived by appearing generally without objection to jurisdiction. *People v. Securities Discount Corp.* (1935), 361 Ill. 551, 554, 198 N.E. 681, 682; *Mullaney, Wells & Co. v. Savage* (1975), 31 Ill. App. 3d 343, 347, 334 N.E.2d 795, 799.

■■ The court also had subject matter jurisdiction to enter the orders appealed from in this case. Illinois circuit courts have jurisdiction in all justiciable matters (Ill. Const. 1970, art. VI, §9) and may exercise jurisdiction in cases involving enforcement or modification of out-of-state divorce decrees when they are registered as statutorily provided. (*Thomas Thomas* (1974), 23 Ill. App. 3d 936, 938, 321 N.E.2d 159, 161.) This case became justiciable when the Oregon judgment was enrolled in the circuit court pursuant to the procedures set forth in section 511(c) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 511(c)).

■■■ Respondent next questions the circuit court's power by suggesting that the Illinois court was bound by an interviewing URESA decision of a Florida court which reduced his child support obligation to $100 per month. Respondent argues that as Mrs. Coons first filed an action seeking arrearages in Illinois but did not wait for it to be heard before seeking URESA enforcement against him in Florida, she should be bound by the Florida court order. We disagree. When a support order is issued by another court before a URESA responding court renders its decision, the latter must conform its order to the amount granted in the prior proceeding. (*People ex rel. Kerl v. Kerl* (1979), 75 Ill. App. 3d 347, 349, 393 N.E.2d 1305, 1307.) The uniform act was designed to be a supplementary mechanism directed at enforcing previously entered orders rather than a device for terminating or modifying child support. (*Super v. Armstrong* (1980), 83 Ill. App. 3d 1062, 1064-65, 404 N.E.2d 1008, 1010.) To permit the URESA court to modify what it is called upon to enforce would thwart the laudable objectives of the statutory scheme. (*Littrell v. Littrell* (Tex. Civ. App. 1980), 601 S.W. 2d 207, 209.) Indeed, Florida courts as responding courts under the Act are forbidden from entering support enforcement orders which supercede any previous order issued in a dissolution of marriage action. (See *Ray v. Pentlicki* (Fla. App. 1979), 375 So. 2d 875, 878.) We conclude the circuit court was not bound by the Florida court's modification as that court was without subject matter jurisdiction to reduce respondent's child support obligations existing under the Oregon judgment. *Littrell*, at 209.

■■ We now turn to the merits of the orders on appeal and first consider whether the trial judge abused his discretion in modifying respondent's visitation rights. The governing standard in modification of visitation cases is the best interests of the children (*Crichton v. Crichton* (1979), 75 Ill. App. 3d 326, 329, 393, N.E.2d 1319, 1321; *Taraboletti v. Taraboletti* (1978), 56 Ill. App. 3d 854, 856, 372 N.E.2d 155, 156; *Blazina v. Blazina* (1976), 42 Ill. App. 3d 159, 167, 356 N.E.2d 164, 170-71), and the party seeking to increase the visitation rights he was originally granted bears the burden of showing that such an alteration is in the best interests of the children. (See *Doggett v. Doggett* (1977), 51 Ill. App. 3d 868, 366 N.E.2d 985; *Keefer v. Keefer* (1969), 107 Ill. App. 2d 74, 245 N.E.2d 784.) Respondent sought to increase his visitation to eight consecutive weeks each summer, but the trial court found that such a lengthy, concentrated visitation would prove traumatic to the children. Respondent failed to offer evidence in support of the expanded visitation he sought, expressing only that he feared the children would become estranged from him. We find no abuse of the trial court's discretion in denying respondent increased visitation and will not disturb its order. See *Flanagan v. Flanagan* (1970), 123 Ill. App. 2d 17, 259 N.E.2d 610.

■■ Respondent notes for the first time in his reply brief that the modification order actually reduced his visitation from one weekend each month to three weeks each summer, although Mrs. Coons had not requested his visitation rights be restricted. The point will be considered waived (*In re Marriage of Thornton* (1980), 89 Ill. App. 3d 1078, 1092, 412 N.E.2d 1336, 1347), and, in any event, the adjustment appears reasonable under these circumstances as respondent had sought a more concentrated visitation period because of the expense of travel from Flordia monthly to see the children. Compare *In re Marriage of Solomon* (1980), 84 Ill. App. 3d 901, 907, 405 N.E.2d 1289, 1293.

Respondent also seeks reversal of the order modifying his child support obligation. The court denied respondent's cross-petition to extinguish his child support responsibility, finding that his decision to attend law school was voluntary and unilateral and thus could not be considered as a basis for modifying the support obligation. Also, his $18,000 investment loss was considered by the trial court as not chargeable against the mother and children who had not consented to the venture.

■■ We do not agree with the trial judge's rationale for denying respondent's petition, as the voluntariness and consent standards he used were erroneously restrictive. It is well established that a voluntary change in occupation or employment made in good faith may constitute a material change in circumstances sufficient to warrant modification of a child support order. (*In re Marriage of Ebert* (1980), 81 Ill. App. 3d 44, 46-47, 400 N.E.2d 995, 997; *In re Marriage of Uphoff* (1980), 80 Ill. App, 3d 145, 147, 398 N.E.2d 1243, 1245; *Glass v. Peitchel* (1976), 42 Ill. App. 3d 240, 242, 355 N.E.2d 750, 754.) The crucial consideration in testing "good faith" is whether the change in status was prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests. (*Graham v. Graham* (1974), 21 Ill. App. 3d 1032, 1036, 316 N.E.2d 143, 146; see *Nelson v. Nelson* (1960), 225 Ore. 257, 357 P.2d 536.) Substantial economic reverses resulting from investments or employment are proper circumstances to be considered in determining whether child support might be reduced or terminated. (See *Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 555, 344 N.E.2d 493, 496.) The change in circumstances must, however, be fortuitous in nature and not the result of deliberate action or conduct of the party seeking the reduction. (*Shellene v. Shellene* (1977), 52 Ill. App. 3d 889, 890-91, 368 N.E.2d 153, 154; see also *Miller v. Miller* (1978), 65 Ill. App. 3d 844, 847, 382 N.E.2d 823, 826.) While in this case the unfortunate investment was obviously a deliberate act on the part of respondent, we doubt the ultimate loss sustained from it can be termed anything but fortuitous; it has not been suggested respondent did not hope for and expect to improve his financial status by this

means. If he had done so, certainly his then increased assets would be considered in determining his ability to pay child support.

■■ We think these factors should have been considered even though respondent did not ask his former wife and children for permission to attend law school or before investing $10,000 in securities. Child support obligations may be modified if the circumstances fairly warrant alteration, and the judgment of what is possible and fair must necessarily include consideration of the children's welfare in light of the father's abilities. (*Nelson*, 225 Ore. 257, 263-64, 357 P.2d 536, 539.) Ordinarily a man makes an investment or changes his occupation with the hope of improving his prospects for the future, including raising his own standard of living as well as that of his children. (See *Fogel v. Fogel* (1969), 184 Neb. 425, 168 N.W.2d 275.) Following dissolution of marriage, the custodial parent and children cannot be allowed to freeze the other parent in his employment or otherwise preclude him from seeking economic improvement for himself and his family. So long as his employment, educational or investment decisions are undertaken in good faith and not deliberately designed to avoid responsibility for those dependent of him, he should be permitted to attempt to enhance his economic fortunes without penalty.

Although the court found that the two circumstances we have discussed could not be considered as factors in modifying child support, respondent was granted some measure of relief; one-half of the child support accruing between December 1977 and October 1979 was temporarily abated until January 1, 1980, with respondent directed to then pay 1½ times the original amount until the abated payments were made up. The court stated it was, following *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161 (abstract), in which the amount of support to be paid was reduced because of an inability to pay it but with the abated portion to continue to accrue and the time and method of repayment to be determined in the future. No reason was given by the trial court in the present case for selecting January 1, 1980, as the date repayment of the abated sum would commence. *Martinec* does not authorize ordering repayment as of an arbitrary date; it provided that the custodial parent be required to petiton for such relief if the financial condition of the father improved.

Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. State. 1979, ch. 40, par. 505) provides:

> "[T]he court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable and necessary for his support, without regard to marital misconduct, after considering all relevant factors, including: * * *
>
> (2) the financial resources and needs of the custodial parent;

(3) the standard of living the child would have enjoyed had the marriage not been dissolved; * * *

(5) the financial resources and needs of the noncustodial parent or parents."

■■ The trial court thus had wide discretion under the Act to seek to provide for the needs of the children. In applying these standards, it is apparent the court determined that respondent did not presently have the financial resources needed to meet the terms of the previous support order and accordingly reduced it by one-half. We find no authority in the Act, however, for the proviso ordered by the court that the $140 balance of the original support order would only temporarily abate and would continue to accrue as an eventual obligation to be paid. The Act is geared towards a present ability to pay support and does not suggest in its terms that possible future financial resources of a party may also be taken into account. See *Elizer v. Elizer* (1976), 36 Ill. App. 3d 552, 555, 344 N.E.2d 493, 496.

In a similar context in *McManus v. McManus* (1976), 38 Ill. App. 3d 645, 348 N.E.2d 507, an award for child support was made self-adjusting, by increasing the amount required to be paid on the child's sixth, tenth and fourteenth birthdays, without further consideration by the court. The appellate court reversed, noting

"In ordering the payment of child support, a circuit court must consider the needs of the child, the separate income of the wife, and the income of the husband. [Citations.] Because changes in these facts cannot be anticipated with accuracy, a circuit court should ordinarily not try to anticipate such changes by making its award of child support to increase automatically with the child's age." (38 Ill. App. 3d 645, 647, 348 N.E.2d 507, 509.)

In *Schwartz v. Schwartz* (1976), 38 Ill. App. 3d 959, 349 N.E.2d 567, a support order anticipated the expected receipt by the supporting father, two years hence, of approximately $50,000 from a trust and provided for an automatic increase at that time. In vacating the child support and alimony awards as speculative, the court stated:

"The fact that it is known that defendant is *expected* to receive the income from the trusts at a future date does not mean he *will* receive it. The entire idea behind allowing modification procedures in divorce law is to provide for legitimate changes in circumstances. This case appears to be a case where modification might be justified if and when defendant's financial circumstances change, based on the situation existing [then]." (38 Ill. App. 3d 959, 965, 349 N.E.2d 567, 572.)

The court also considered a similar question in *Lenz v. Lenz* (1975), 33 Ill. App. 3d 568, 337 N.E.2d 195, in which it was urged that the court in fixing

a support award take into consideration the possibility of gifts, advances or an inheritance. The court concluded these possibilities should not be a basis for a present support award.

We conclude the trial court erred in presuming that respondent would have the financial ability to pay $420 per month in child support commencing January 1, 1980. At the time it made this determination, it also found he was without present means to pay $280 each month and in effect reduced his current support obligation to $140. We find no statutory or case authority for the trial court to temporarily abate that portion of a support order the supporting parent is without means to presently pay, other than *Martinec v. Martinec* (1974), 17 Ill. App. 3d 402, 308 N.E.2d 161 (abstract). We decline to follow the procedures there approved in the present case. Accordingly, the order entered on respondent's petition to modify child support must be vacated and that matter remanded for a determination under the standards we have discussed. See *In re Marriage of Junge* (1979), 73 Ill. App. 3d 767, 771, 392 N.E.2d 313, 316.

■■ Respondent's final contention is that it was error to award $1,000 in attorney's fees to petitioner. The trial judge noted that the fee issue involved only the enforcement aspect of the child support proceedings between October 1977 and August 1979 and stated "*anyone* who is forced to go to court to enforce a valid order should be compensated for costs and expenses incurred." We consider the court employed an improper standard in awarding attorney's fees in this case as it disregarded the financial circumstances of the parties and relied solely on the fact that petitioner was required to employ counsel in order to enforce a child support order.

■■ In general, to justify an award of attorney's fees, the party seeking such an allowance must establish an inability to pay those fees and the ability of the other spouse to do so. (*In re Marriage of Scott* (1980), 85 Ill. App. 3d 773, 782, 407 N.E.2d 1045, 1051-52; *In re Marriage of Fleming* (1980), 80 Ill. App. 3d 1006, 1009, 400 N.E.2d 625, 627-28; *In re Marriage of Pedersen* (1979), 77 Ill. App. 3d 716, 720, 396 N.E.2d 659, 661.) An allowance of fees is never automatic (*In re Marriage of Borowczyk* (1979), 78 Ill. App. 3d 425, 428, 397 N.E.2d 71, 74), nor is it mandated simply upon a showing that one spouse has slightly greater ability to pay the fees. (*In re Marriage of Uphoff* (1980), 80 Ill. App. 3d 145, 147, 398 N.E.2d 1243, 1245.) A court may also consider the circumstances which necessitated the commencement of judicial proceedings and the identity of the spouse who precipitated the need for the current fees. *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 228, 367 N.E.2d 442, 449; *Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 886, 288 N.E.2d 884, 886.

When it becomes necessary for one to retain an attorney for the

purpose of enforcing a previously entered child support order, one is entitled to reasonable attorney's fees, provided the financial standards of the Act are met. (*Scott v. Scott* (1979), 72 Ill. App. 3d 117, 127, 389 N.E.2d 1271, 1279.) The trial court placed undue emphasis on the fact that petitioner incurred legal fees in seeking to enforce the support order and on remand must also consider the question of fees in light of the parties' financial resources as they existed in September of 1979. See *Mueller v. Mueller* (1977), 49 Ill. App. 3d 666, 364 N.E.2d 674; see also *In re Marriage of Miller* (1980), 84 Ill. App. 3d 931, 937, 405 N.E.2d 1099, 1105; *Barton v. Barton* (1944), 323 Ill. App. 357, 360, 55 N.E.2d 542, 544.

For these reasons the order denying respondent's petition to modify visitation will be affirmed; the orders modifying child support and awarding attorney's fees will be vacated. The cause is remanded for further proceedings as to child support and fees.

Affirmed in part; vacated in part; remanded for further proceedings.

SEIDENFELD, P. J., and LINDBERG, J., concur.