566 So.2d 1308 (1990)
Roberto ARCE, Appellant,
v.
Hortensia ARCE, Appellee.
Nos. 89-1716, 90-189.
District Court of Appeal of Florida, Third District.
July 17, 1990.
Rehearing Denied October 12, 1990.
*1309 Theodore J. Silver, Greene and Greene, P.A., and Cynthia L. Greene, Miami, for appellant.
Sydney Syna and H. Steven Sussman, Miami, for appellee.
Before SCHWARTZ, C.J., and JORGENSON and LEVY, JJ.
JORGENSON, Judge.
In this consolidated appeal, Roberto Arce appeals from a final judgment of dissolution of marriage and an order of contempt. For the reasons that follow, we reverse the order finding Roberto Arce in contempt of court, reverse in part and affirm in part the final judgment of dissolution of marriage, and remand for further proceedings.
Roberto Arce [husband] and Hortensia Arce [wife] were married for eleven years. During the marriage, the wife was employed briefly as a respiratory technician, but worked primarily as a homemaker and raised the couple's three children. She obtained a bachelor's degree in psychology and planned to attend graduate school. The husband finished both his undergraduate education and medical school during the marriage. To defray the high costs of medical school, the husband participated in the Public Health Service Program, which provided tuition and a stipend in exchange for a three-year commitment to work for the Service upon completion of medical school.
When the husband graduated from medical school in 1982, he began his residency in internal medicine and earned approximately $11,800 a year. In 1985 he began to fulfill his commitment to the Public Health Service; between July, 1985, and July, 1988, he earned between $32,000 and $45,000 a year.
In 1987, the husband accepted a fellowship in cardiology at the Henry Ford Foundation in Detroit, Michigan, to begin in July, 1989.[1] Until that fellowship started, the husband took a temporary job for one year as an emergency room physician at a gross salary of $8,640 a month.
At the final hearing on the wife's petition for dissolution of marriage, the husband submitted his financial affidavit listing his income as $36,000 per year, the sum he was to receive in three months, once his fellowship began. The trial court agreed that the *1310 husband's actual income would be $36,000 a year during the three-year fellowship but found that the husband's income from his temporary job as an emergency room physician, $100,000 a year, represented his ability to pay. The trial court concluded that the husband, by accepting the fellowship, voluntarily reduced his income and ordered him to pay the wife $2,000 a month in rehabilitative alimony and $500 a month in child support. The trial court also ordered the husband to pay lump sum alimony of $60,000, payable one year after his graduation from the fellowship in three consecutive annual installments, and awarded the wife sole title and possession of the marital home. The court further ordered the wife to "set aside" $150 from the child support payments each month for the children's college education.
When the husband started his fellowship in Detroit, he sent the wife approximately $1,700 a month, which was over 50% of his net income, but $800 a month less than ordered by the court. The wife sought an adjudication of contempt. The trial court held a hearing on the matter, at which the husband testified by telephone from Detroit. The husband testified that he had no savings, lived in a dormitory, and earned less than $2,500 a month. The trial court reiterated its earlier finding that the husband had voluntarily reduced his income, found that he had the present ability to pay, and adjudicated him in contempt of court. The husband has appealed from both the final judgment and the order of contempt.
Although income that a spouse is capable of earning may be attributed to him in determining the amount of support he must pay, see Ward v. Ward, 502 So.2d 477 (Fla. 3d DCA 1987), the court below erred in its interpretation of the law and in applying the holding of Ward in this case. At the final hearing on the petition for dissolution, the court stated, "I want to encourage him, you know, to go through this educational program because I think in the final analysis he will double his income; that is, double his present-day income, which is for the children as the ultimate beneficiaries of his endeavors" (emphasis added). The trial court thus recognized that, once the husband finished his fellowship in cardiology, his earning capacity would be greatly enhanced.
The trial court erred in taking an unreasonably narrow view of the parties' situation. The husband clearly has a current obligation to support his wife and children; their needs have been established. However, the final judgment and the order of contempt that are before us today force the husband to compromise, and perhaps abandon, his cardiology fellowship. In so doing, the trial court jeopardized the long-term financial well-being of the wife and three children.
This is an issue of first impression in Florida. However, other jurisdictions have recognized that
[F]ollowing dissolution of marriage, the custodial parent and children cannot be allowed to freeze out the other parent in his employment or otherwise preclude him from seeking economic improvement for himself and his family. So long as his employment, educational or investment decisions are undertaken in good faith and not deliberately designed to avoid responsibility for those dependent upon him, he should be permitted to enhance his economic fortunes without penalty.
Coons v. Wilder, 93 Ill. App.3d 127, 133, 48 Ill.Dec. 512, 518, 416 N.E.2d 785, 791 (1981). See also Robesena W. v. George B.D., 145 A.D.2d 426, 427, 535 N.Y.S.2d 406, 407 (N.Y. App. Div. 1988) (mother's decision to enter law school not a voluntary reduction in earnings to avoid support payments, as "pursuit of a law degree increases her potential to provide support in the future and should not be viewed as motivated by a desire to evade her obligations to the child"); In re Marriage of Kowski, 123 Ill. App.3d 811, 79 Ill.Dec. 286, 463 N.E.2d 840 (1984) (modification of support obligation appropriate where supporting spouse terminates employment to further education); Graham v. Graham, 21 Ill. App.3d 1032, 316 N.E.2d 143 (1974) (modification of support payments within trial court's discretion where husband temporarily decreased income in order to complete doctorate); Martinec v. Martinec, 17 Ill. App.3d 402, 308 N.E.2d 161 (1974) (modification of support payments within trial *1311 court's discretion where husband left full-time job as police officer to become full-time college student). Because the primary role of the courts in dissolution and post-dissolution proceedings is to protect the interests of the parties most devastated by a family rift, we believe that the long-term view expressed in these cases best serves that role.
The Florida cases that address the issue of a former spouse's voluntary reduction of income are clearly distinguishable from this case. In Ward v. Ward, 502 So.2d 477 (Fla. 3d DCA 1987), this court held that a husband who chose to retire from his job to spend more time in leisure activities had voluntarily reduced his income and was not entitled to modification of his alimony obligation to his former wife. In Ward, we held that "only when the ability to carry out that obligation [of support] is lessened by circumstances beyond the control of the party required to pay support will such party be entitled to have the amount of the obligation reduced." 502 So.2d at 478. However, that holding was premised upon evidence in the record that the husband was "tired of working, would not work even if a job were available, and was desirous of spending his time hunting, fishing, and puttering in his yard." Id. Although the husband was entitled to retire from forty years of steady employment, "he was not entitled to have his former wife defray the cost of his retirement through a reduction of his longstanding obligations to her." Id. The income that the husband was capable of earning was therefore attributed to him, even though his actual income would be virtually depleted by the support payments. Id. Likewise, in Scapin v. Scapin, 547 So.2d 1012 (Fla. 1st DCA 1989), the court held that a former husband who had participated in an illegal strike, had not reapplied for government jobs, and merely resigned himself to underemployment in the lawn care business was not entitled to modification of his support payments. Income that the husband could have earned was attributed to him, even though the payments ordered exhausted the husband's actual income. 547 So.2d at 1013. See also Bielecki v. Bielecki, 505 So.2d 546 (Fla. 3d DCA) (where husband not using his best efforts to gain employment equal to his capabilities, court properly attributed income to him), rev. dismissed, 511 So.2d 297 (Fla. 1987); Maddux v. Maddux, 495 So.2d 863 (Fla. 4th DCA 1986) (court properly attributed greater income to husband who voluntarily lowered salary from $500 a week to $300 a week because of business difficulties). Implicit in these decisions is a determination that the obligated spouse was neither meeting the current needs of the wife and children nor reasonably ensuring their future economic well-being. Instead, the spouse was simply acting with his own interests at heart. Here, the husband was acting in good faith and was embarked on a course of conduct reasonably calculated to ensure that his family would face a financially secure future. To compel him to abandon his fellowship and seek a position which may now pay more money, but which will not help him meet the children's long-term needs would be inequitable and short-sighted.
We hold that a spouse who suffers a temporary reduction in income to complete his education has not voluntarily reduced his income. A spouse who demonstrates his good faith and whose conduct is reasonably calculated to ensure the future economic well-being of the persons to whom he owes a duty of support may be temporarily excused from having attributed to him the income which he is capable of earning, but which he is currently not earning.[2] Such an approach is particularly appropriate here where, throughout the marriage, the husband was pursuing his medical education and now, while completing that education, is making a heroic effort to meet his support obligations. While *1312 working towards his fellowship, he is working extra shifts and has met all of his child support obligations[3] and 65% of his alimony obligations.[4]
Our opinion should not be read to excuse a spouse from making support payments, but merely to allow a trial court the discretion to fashion a schedule of payments that will take into account the needs of the family and the current ability of the husband to pay, allowing for future actions for modification once the spouse has realized the higher earning capacity. In exercising that discretion, the trial court must determine whether the spouse has acted in good faith and whether the temporary reduction in income is part of a course of conduct reasonably designed to ensure the future economic security of the family.
Our decision does not grant the wife an interest in her husband's future earnings, but merely holds that his current obligation should be determined by his actual income while he is completing his medical fellowship.[5]
When the husband completes his fellowship and his salary increases, the wife may petition the court for a modification in support payments based solely on an increase in the husband's income. It is generally true that an increase in the needs of a recipient spouse must precede an upward modification in support payments. See, e.g., Waldman v. Waldman, 520 So.2d 87 (Fla. 3d DCA) (mere increase in obligated spouse's income not grounds for increased support payments, absent showing of increased need by other spouse), rev. denied, 531 So.2d 169 (Fla. 1988); Irwin v. Irwin, 539 So.2d 1177, 1178 (Fla. 5th DCA 1989) (in petition for modification, "the recipient's need is the sine qua non of the determination... . To hold otherwise improperly grants the alimony recipient a continuing interest in the former spouse's good fortune."). However, the exception to that rule
obtains in the relatively rare case where the recipient spouse's needs ... were not, and could not be, initially met by the original final judgment of marriage dissolution due to the then-existing financial inability of the paying spouse to meet those needs, which continue unmet at the time modification is sought. Where such a paying spouse's earnings substantially increase subsequent to the final judgment and the recipient spouse's needs continue to remain unmet, it has been held that such spouse is entitled to an upward modification in alimony.
Bedell v. Bedell, 561 So.2d 1179 (Fla. 3d DCA 1989) (en banc) (citations omitted).[6] The principle expressed in Bedell applies in this case. The wife's needs have not been met by the original award of support. When she petitions for a modification of support obligation, she will not have to make a showing of increased need; instead, she will only have to show the husband's increased ability to pay.
We, therefore, reverse those portions of the final judgment of dissolution of *1313 marriage that attribute to the husband an annual income of $100,000 and remand for redetermination of his support obligations.[7] We also reverse the order adjudicating the husband in contempt of court. Furthermore, the award of $60,000 in lump sum alimony cannot stand. "An award of lump sum alimony should never be made unless the spouse being required to pay is in a financial position to make payment of such gross award without impairing or endangering his economic status." Bradley v. Bradley, 327 So.2d 253 (Fla. 4th DCA 1976) (citations omitted). The record is devoid of any evidence that the husband has the ability to pay. Moreover, there is no evidence that the wife is entitled to such an award. See generally Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) (lump sum alimony may be awarded where special equities present, or to effect equitable distribution of marital property). We affirm all other portions of the final judgment of dissolution of marriage.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
NOTES
[1] The parties disagree over whether they had discussed before their separation the husband's plans to further his medical education by way of a fellowship. The wife did not file her petition for dissolution of marriage until almost one year after the husband accepted the fellowship.
[2] The approach that we propose would, of course, apply equally to a wife who owes a duty of support to her former spouse and children.
[3] Because the husband has been meeting his $500 a month child support payments, we see no need to determine whether section 61.30(2)(b), Florida Statutes (1989), compels a different result. The equitable principles that led to our opinion today apply equally to determinations of alimony and child support. The Child Support Guidelines, section 61.30, allow the trier of fact to depart from the guidelines when application of the guidelines would be "unjust or inappropriate." Such is the case here. Moreover, the wife did not file a cross-appeal from the final judgment of dissolution of marriage and has never contended that $500 a month in child support is not sufficient to meet the current needs of the children.
[4] The husband testified at the contempt hearing by telephone because he could not afford to come back to Miami. He has not been able to visit his children in Miami or pay for a visit with them in Detroit for the same reason.
[5] Likewise, our decision should not be read to imply a change in the rule of law that a professional degree is not itself "property" subject to distribution as lump sum alimony. Hernandez v. Hernandez, 444 So.2d 35 (Fla. 3d DCA 1983), rev. denied, 451 So.2d 848 (Fla. 1984); Hughes v. Hughes, 438 So.2d 146 (Fla. 3d DCA 1983).
[6] In Bedell the wife sought a modification of her permanent alimony. In this case, the alimony awarded was rehabilitative. Nevertheless, the same equitable principles announced in Bedell apply equally here.
[7] Upon remand, the trial court may not order the wife "to set aside" a sum of money every month to provide for the children's college education. Parents, divorced or not, are not legally obligated to provide their children with a college education. Grapin v. Grapin, 450 So.2d 853 (Fla. 1984); Leaird v. Leaird, 540 So.2d 243, 244 (Fla. 4th DCA 1989).