Margaret S. ROWLAND

v.

Robert E. KINGMAN.

Supreme Judicial Court of Maine.

Argued May 13, 1993.

Decided Aug. 11, 1993.

Ann M. Courtney, E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for plaintiff.

Clarke C. Hambley (orally), Elizabeth J. Scheffee, Givertz, Lunt, Hambley & Scheffee, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Both the plaintiff, Margaret S. Rowland, and the defendant, Robert E. Kingman, appeal from a judgment entered in the Superior Court (Cumberland County, *Beaudoin, J.* (sitting in the Superior Court)), amending the provisions of their divorce judgment relating to the primary physical residence of and support for their two minor children. Finding no error in the record, we affirm the judgment.

The record reflects the following: On May 6, 1991, Rowland and Kingman obtained a divorce judgment providing that the primary physical residence of their two minor children, Edwin and Meagan, be with Rowland; that parental rights and responsibilities be shared by Rowland and Kingman; and that Kingman pay child support to Rowland. Following the divorce, Rowland remained with the children at the family home in Yarmouth, where she maintained her medical practice, and Kingman moved to Winslow. Rowland subsequently remarried and began planning to move to Oregon where her husband was located. In March 1992, Kingman filed a motion to modify the divorce judgment to change the primary physical residence of the children to be with Kingman and to amend the child support provision should Rowland move to Oregon. In early August, pending a final hearing on Kingman's motion, there was a hearing before the court on the limited issue of whether the children would travel to Oregon with Rowland on August 24, the date of Rowland's intended move. On August 17, the trial court issued an order providing that if Rowland moved to Oregon the primary physical residence of the children would shift to Kingman, on the condition that he reside in Yarmouth.

As a consequence of the August 17 order, Kingman located several potential homes in Yarmouth. Because Kingman wanted to know whether he should sign a lease, he asked Rowland directly about her plans to move to Oregon. Rowland replied that "if I need to stay in Maine to keep my children, I will." When Kingman later attempted to verify his next visitation period with the children, Rowland did not inform him that because of the planned move the visit would be impossible. When Edwin asked Rowland if his father knew they were going to Oregon, Rowland replied that Kingman "knew of the plane tickets." Rowland took the children to Oregon on August 24. Kingman was advised of the move on the following day.

In response to Kingman's *ex parte* motion, the August 27 order of the trial court (*Cleaves, J.* (sitting in the Superior Court)) provided, *inter alia*, for the issuance of a writ of habeas corpus for the return of the children to Kingman and granted Kingman sole parental rights and responsibilities of the parties' children until further order of the court. Kingman flew to Oregon and

returned with the children to Yarmouth where he had rented an apartment.

In September 1992, the court held a hearing on all outstanding motions in this matter, including Kingman's original motion to modify the divorce judgment and Rowland's motions for findings of fact and conclusions of law regarding the August 17 order and reconsideration of that order, and her motion to vacate the August 27 order. By its order dated November 19, 1992, the trial court, *inter alia*, provided that the primary physical residence of the children be with Rowland if she resided in Yarmouth, but should Rowland move to Oregon the children's primary physical residence would be with Kingman on the condition that Kingman reside in Yarmouth; that the parents have shared parental rights and responsibilities, except Kingman would have the sole right to determine day care issues for the children; and that Kingman's child support obligation be increased. It is from this judgment that the parties appeal.

▆ Rowland first contends that the trial court committed an error of law in its determination relating to the best interests of the children by failing to afford an appropriate level of deference to her decision, as the parent with whom the children had their primary physical residence, that it was in the best interests of the children to reside with her in Oregon.[1] She argues that such parent should be permitted to decide where that parent and any minor children will reside, and that decision should be disregarded by the court only when it would present a clear danger to the children's well being. We disagree.

1. Rowland also argues that the judgment violated her constitutional rights to travel and marital privacy. Because these arguments were not made before the trial court, they are not cognizable on appeal. *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 712 n. 2 (Me.1993).

2. 19 M.R.S.A. § 752(5) (Supp.1992) provides:

The court, in making an award of parental rights and responsibilities with respect to a minor child, shall apply the standard of the best interest of the child. In applying this standard, the court shall consider the following factors:
  A. The age of the child;

By P.L.1987, ch. 721, 19 M.R.S.A. § 752(12), *amended by* P.L.1987, ch. 179, § 3, was repealed and replaced by the following provision:

> The relocation, or intended relocation, of a child resident in this State to another state by a parent, when the other parent is a resident in this State and there exists an award of shared or allocated parental rights and responsibilities concerning the child, is a substantial change in circumstances.

*See* 19 M.R.S.A. § 752(12) (Supp.1992). It is not disputed that Rowland intended to relocate the children to Oregon. Pursuant to section 752(12) this intended relocation was a substantial change in circumstances that on a proper motion by either party warranted a review by the court of any previous arrangement of parental rights and responsibilities with respect to a minor child. We have previously stated:

> [T]he question that the court must first consider on a motion to modify a custody arrangement is whether there "[h]as occurred since the prior custody order a change in circumstances sufficiently substantial in its effect upon the best interests of the children as to justify a modification of the custody arrangement."

*Ehrlich v. Bloom*, 585 A.2d 809, 812 (Me. 1991) (quoting *Villa v. Smith*, 534 A.2d 1310, 1312 (Me.1987)), *cert. denied*, ——— U.S. ———, 112 S.Ct. 201, 116 L.Ed.2d 160 (1991).

Factors to be considered by the court in applying the standard of the best interest of the child are set forth in section 752(5).[2]

  B. The relationship of the child with the child's parents and any other persons who may significantly affect the child's welfare;
  C. The preference of the child, if old enough to express a meaningful preference;
  D. The duration and adequacy of the child's current living arrangements and the desirability of maintaining continuity;
  E. The stability of any proposed living arrangements for the child;
  F. The motivation of the parties involved and their capacities to give the child love, affection and guidance;
  G. The child's adjustment to the child's present home, school and community;

The provisions of section 725(5) do not foreclose the court's consideration of either parent's decision relating to the residence of that parent and any minor child. However, we find nothing in the statutes governing parental rights and responsibilities with respect to a minor child of divorced parents, or in our case law to support Rowland's contention that the court should defer to the decision of that parent with whom the child has primary physical residence in determining the best interests of that minor child.

Rowland also contends that the trial court abused its discretion by ordering that the primary physical residence of the children be with Kingman if Rowland moved to Oregon. Here, the trial court found that Rowland's intended move to Oregon would constitute a change in circumstances substantially affecting the children's best interests. *See Villa*, 534 A.2d at 1312. Consequently, the court provided that the primary physical residence of the children would remain with Rowland if she remained in Yarmouth, however, should she move to Oregon the best interests of the children would be served by the children's primary physical residence being with Kingman on the condition that he reside with the children in Yarmouth. The court in its order specifically stated that because Rowland had testified several times that it would not occur, the court did not address the issue of parental contact should Rowland move to Oregon.

In *Boutin v. Dionne*, 458 A.2d 426 (Me. 1983), we stated:

The legal principles [applicable in the appellate review of a custody arrangement] are well established and well known. In connection with both the original divorce judgment and later motions for change of custody, the sensitive questions relating to the upbringing of minor children of the divorced couple must of necessity be committed to the sound judgment of the trial judge who hears the witnesses who describe the relevant circumstances of the particular case.

*Id.* at 426. The trial court's "decision to modify a custody order will only be disturbed if the factual findings on which it is based are clearly erroneous or if it has abused its discretion crafting the new order." *Ehrlich*, 585 A.2d at 812.

The trial court had before it the following evidence: The children are currently well adjusted to their environment. They maintain frequent and positive contact with Kingman, who has actively sought a significant role as a caring and supportive father in their lives. They would suffer equally from being distant from either parent. Kingman is quite capable of performing as the custodial parent and is willing to do so in Yarmouth, where the children would greatly benefit from the continuity of locale, routine, community, and schooling. Edwin, a particularly introverted child, is emotionally vulnerable to the disruption of his surroundings at this point in his development and would experience great difficulty in adjusting to a move to Oregon. The children expressed a meaningful desire to stay in Yarmouth. Furthermore, there was evidence before the court that Kingman is the parent better able to foster contact between the children and the other parent and resolve disputes with the other parent in an appropriate manner. Based on the record before us and the best interests considerations mandated in 19 M.R.S.A. § 752(5), we cannot say that the trial court's findings are clearly erroneous or that its amendment of the divorce judg-

---

H. The capacity of each parent to allow and encourage frequent and continuing contact between the child and the other parent, including physical access;
I. The capacity of each parent to cooperate or to learn to cooperate in child care;
J. Methods for assisting parental cooperation and resolving disputes and each parent's willingness to use those methods;

K. The effect on the child if one parent has sole authority over the child's upbringing;
K-1. The existence of a history of domestic abuse between the parents; and
L. All other factors having a reasonable bearing on the physical and psychological well-being of the child.

ment as it relates to the primary physical residence of the children constitutes an abuse of discretion.[3]

By his appeal, Kingman contends that the trial court's increase of the amount of child support to be paid by him on the ground that Rowland's earning capacity had decreased was clearly erroneous because she voluntarily became underemployed. *See* 19 M.R.S.A. §§ 311(5)(D) (Supp.1992) (when party voluntarily becomes or remains unemployed or underemployed, gross income may include difference between amount earned and the party's earning capacity). We disagree. Rowland had closed her medical practice in Maine in anticipation of her move to Oregon. There is evidence in the record that because of the time required to rebuild her practice, Rowland would not be able to immediately achieve her previous level of income. Furthermore, there is no evidence that Rowland closed her practice for the purpose of becoming underemployed and decreasing her support obligation.

Kingman also contends that the trial court abused its discretion by not deviating from the child support guidelines. Because there is no evidence in the record that Kingman ever "provide[d] the court with written proposed findings showing that the application of the [support guidelines] would be inequitable or unjust," as required by section 317(2), it cannot be said that the trial court abused its discretion by fixing the amount of child support to be paid by Kingman in accordance with the guidelines set forth in section 316.

The entry is:

Judgment affirmed.

WATHEN, C.J., and COLLINS, RUDMAN and DANA, JJ., concurring.

CLIFFORD, Justice, with whom ROBERTS, Justice, joins, dissenting.

Because the Court's decision places undue emphasis on the current residence of the children by requiring that their primary residence be in the Town of Yarmouth, a location where *neither* parent has a reason to reside, I respectfully dissent.

According to the Superior Court's order, the primary physical residence of the children is to be with Rowland, so long as she does not relocate to Oregon. Rowland has remarried, her new husband lives in Oregon, and naturally Rowland would prefer to live there with him. The Superior Court's order goes on to provide that should Rowland move to Oregon, the children's primary physical residence is to be with Kingman, but only on the condition that he reside in Yarmouth. Kingman owns a home in Winslow. The order results in requiring one of the parents to reside in Yarmouth, a location where, other than to be the primary physical custodian of the children, neither parent now wants to reside.

Although the current living arrangements of the children and how they adjust to changes in their home, schools, and community, are factors to be considered by the court in determining the best interests of the children, *see* 19 M.R.S.A. §§ 752(5)(D), (E) & (G) (Supp.1992), those factors must be considered together with all other rele-

---

**3.** Rowland also contends in her appeal that the finding of the trial court in its August 27, 1992 order that she was in contempt of its August 17 order for taking the children to Oregon was in error. This contempt finding had no independent practical effect; the trial court's August 27 order awarded Kingman expenses for bringing the children back to Maine and attorney fees. These awards are supportable without reference to the contempt finding. *See* 19 M.R.S.A. § 752(12) (court may employ any compulsory process it deems proper to enforce powers given under Title 19 "on which costs shall be taxed as in other actions"). By moving the children to

Oregon, Rowland caused Kingman to incur the expenses of enforcing the court's August 17 order. An award to Kingman of fees and expenses, in this context, is not an abuse of discretion. *See Most v. Most*, 477 A.2d 250, 263–64 (Me.1984) (divorce court has inherent powers to enforce its orders); *Finn v. Finn*, 534 A.2d 966, 968–69 (Me.1987) (trial court's award of fees and costs reviewable for abuse of discretion). Since the contempt finding has no practical effect, the issue of its propriety is moot, and we need not address it. *Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn S.P.A.*, 320 A.2d 247, 250 (Me.1974).

vant circumstances, and in the context of the reality of where the parents live and work. In my view, to require that a residence be maintained for the children in Yarmouth, when neither parent has any other reason to reside there, wastes the parents' resources, contradicts common sense, and constitutes an abuse of discretion.

I would vacate the judgment and remand for the court to reconsider the primary physical residence of the children, along with parental rights and responsibilities and rights of visitation, in the proper perspective of where the respective parents live and work.