Charles B. HARVEY, Jr.

v.

Cheryl A. ROBINSON formerly Cheryl Harvey.

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 27, 1995.

Decided Sept. 18, 1995.

---

J. Bradford Coffey, Mitchell & Stearns, Bangor, for Plaintiff.

Martha J. Harris, Paine, Lynch & Harris, P.A., Bangor, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

Cheryl Robinson appeals from a judgment entered in the Superior Court (Penobscot County, *Pierson, J.*) affirming the judgment of the District Court (Bangor, *Hjelm, J.*) substantially reducing the amount of her former husband's child support payments. Robinson argues that the District Court erred when it approved a reduced level of child support that did not reflect her former husband's current full-time earning capacity. We agree, and accordingly we vacate the judgment.

I.

In a 1988 divorce judgment the District Court (Bangor, *Kravchuk, J.*) determined that Robinson and Harvey's two children, Karen (born 1980) and Sara (born 1981), would reside principally with Robinson and that Harvey would pay to Robinson as child support . $345 bi-weekly. In 1991, Harvey made $26,000 as a civilian employee of the National Guard and another $3,500 for weekend Guard service. He had a total income of approximately $35,500 because of additional work with an ambulance service.

In 1992, having completed 20 years of service with the National Guard, Harvey anticipated that he might face involuntary retirement. Rather than waiting to see if this involuntary retirement occurred, Harvey retired from the Guard voluntarily to pursue his long deferred dream of going to college and medical school. He is currently a full-time undergraduate student.

As a result of this decision, Harvey now has a gross income of approximately $13,840. This amount reflects the income from part-time work he is able to do while in school and some educational grant money.

After Harvey left his full-time job with the Guard, he stopped making child support payments. In July 1992 he moved to reduce his support obligation. In November 1992 he cashed in his retirement pension to obtain funds to pay a child support arrearage of $3,400. In December, however, he again stopped making child support payments.

In May 1993, the District Court heard Harvey's motion to reduce his support obligation. Harvey had just completed his first year of undergraduate schooling and was behind approximately $3,800 in his child support payments. Robinson testified that Harvey's failure to make these payments had

prevented her from purchasing winter boots and coats for her daughters and had forced them to forego gymnastics, an activity in which they had participated for five or six years. At that time Robinson was employed full-time as a medical secretary earning $21,000 annually. Seven years remained before Harvey would complete medical school, at approximately the same time his younger daughter would no longer be a minor.

Despite Robinson's urging, the court used Harvey's current gross income as a full-time student to calculate the appropriate child support obligation, instead of his earning capacity before beginning college.[1] The court found that Harvey's decision to leave his full-time employment was made in good faith, and, therefore, using $13,840 as Harvey's gross income and $21,000 as Robinson's gross income, established a support payment for Harvey of $60 per week. The court found, however, that it was equitable in this instance, particularly because Harvey had recently purchased a new automobile, to deviate upward from this amount. The court also stated that it was considering the effects on the children of the reduced support payments. Accordingly, it ordered Harvey to pay $80 per week, increasing to $86 per week in December 1993 when his younger daughter reached twelve years of age. Robinson unsuccessfully argued that based on Harvey's earning capacity, his gross income should be $36,000 and his weekly child support payment pursuant to the work sheet should be $213, increasing to $236 in December 1993. The Superior Court affirmed the order and Robinson's appeal followed.

## II.

■ Because the Superior Court acted as an appellate court, we review directly the decision of the District Court. *Pederson v. Pederson*, 644 A.2d 1045, 1046 (Me.1994). We review for abuse of discretion the court's decision to base a child support award on Harvey's current income as a part-time em-

ployee rather than his current earning capacity as a full-time employee, and we "will overturn the trial court's decision only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Tardif v. Cutchin*, 617 A.2d 1032, 1033 (Me.1992) (quoting *Finn v. Finn*, 517 A.2d 317, 318 (Me.1986) (*cert. denied*), *Finn v. Finn*, 483 U.S. 1022, 107 S.Ct. 3268, 97 L.Ed.2d 767 (1987)).

In *Rich v. Narofsky*, 624 A.2d 937, 939 (Me.1993), the mother sought to amend the divorce judgment to modify her support obligation after leaving her full-time job to enroll in college. *Rich*, 624 A.2d at 938. Although she was capable of working part-time while pursuing her studies and full-time during summers, she saw no need to do so. *Id.* The trial court designated the father as the primary caretaker and relieved the mother of any child support obligations. *Id.* We held that the District Court abused its discretion by eliminating the mother's obligations "without some consideration of her part-time and summer earning capacity." *Id.*

■ Although Harvey, unlike the mother in *Rich*, is working as many hours as his educational commitments permit, his decision to change his career and pursue a full-time educational program has imposed needless hardships on his children. Harvey's priorities have the same effect on his children as the unwillingness of the mother in *Rich* to use her part-time and summer earning capacity to help support her children.

■ As justification for its order, the trial court noted that Harvey's decision to pursue a college degree was made in good faith. That is undoubtedly true. There is no suggestion in the record that Harvey opted for school in an effort to avoid his obligation to his children. Harvey's good faith, however, does not ameliorate the dramatic effect on the children of his decision to give up full-

---

1. The statutory child support guidelines include the following provision on the earning capacity of a party:

Gross income may include the difference between the amount a party is earning and that party's earning capacity when the party volun-

tarily becomes or remains unemployed or under employed, if sufficient evidence is introduced concerning the party's current earning capacity.

19 M.R.S.A. § 311(5)(D) (Supp.1994).

time work. That good faith consideration [2] must be balanced by an evaluation of the effect that Harvey's under employment decision has on the interests of his children. By its nature, an order for child support serves the interests of the child by compelling parents to meet their financial responsibilities to their children. *See* 19 M.R.S.A. § 306 (Supp. 1994).

Although the court acknowledged the effects on the children of reduced child support payments, the court approved that reduction because it accepted Harvey's decision to forego full-time employment in favor of full-time education. The court does not explain how this accommodation to Harvey's preferences serves the interests of the children in any way.

Harvey's decision cannot be justified as one that will serve the interests of his children eventually despite their current deprivations. Harvey will complete medical school when his youngest child becomes an adult and he no longer has a legal obligation to support either of his children. This case is markedly different than *Rowland v. Kingman*, 629 A.2d 613 (Me.1993) (*cert. denied, Rowland v. Kingman*, — U.S. —, 114 S.Ct. 884, 127 L.Ed.2d 78 (1994)), in which we approved a decrease in the amount of child support to be paid by the mother based on our recognition that she had closed her medical practice in Maine in anticipation of her move to Oregon with her children. Her decline in income would only be temporary: "There is evidence in the record that because of the time required to rebuild her practice, Rowland would not be able to immediately achieve her previous level of income." *Id.* at 617. In this case, Harvey has no medical practice to rebuild. His practice is years away, when the children are adults.[3]

In a tacit acknowledgment that the interests of the children matter, Harvey argues that an interests analysis that focuses on money is too narrow:

> This [focus on money] fails completely to consider that children may actually suffer through watching parents stay in bad jobs; the children may suffer if maintaining a certain job keeps the parent from spending time with his/her children; and the children may indeed suffer if they are taught at an early age that having children absolutely bars a parent from continuing his/her education. Certainly more than just money must be considered when ascertaining the best interests of children.

Even if there is some abstract merit in this argument, there is not a testimonial word in the record that supports it.

■ As further justification for its order, the court noted that Harvey delayed his secondary education so that he could work and earn income while Robinson attended school. Harvey cannot reduce his child support obligations by arguing that it is now his turn to go to college. Robinson pursued her education at a time when the family was intact and her educational endeavors would eventually benefit the family and herself. Harvey's educational endeavors benefit only himself and deprive the children. He has permitted his preferences to override the interests of his children.

**2.** In *Rowland v. Kingman*, 629 A.2d 613 (Me. 1993) (*cert. denied, Rowland v. Kingman*, — U.S. —, 114 S.Ct. 884, 127 L.Ed.2d 78 (1994)), the trial court's determination to increase the father's child support and decrease the mother's child support was an issue because the mother had voluntarily closed her medical practice in anticipation of a move to Oregon with the children. In affirming the decision of the trial court, we stated that "there is no evidence that Rowland closed her practice for the purpose of becoming underemployed and decreasing her support obligation." *Id.* at 617. This statement was a reference to Rowland's good faith.

**3.** The age of Harvey's children and the length of his educational program also distinguish this case from *Rich v. Narofsky*, 624 A.2d 937 (Me. 1993). In *Rich*, the two children were 8 and 5 at the time the trial court made its decision. The mother anticipated an educational program of five years. Rich argued on appeal that her enhanced education credentials would permit her to increase her financial support for her children. Harvey's children were 13 and 11 at the time the court made its decision. He had seven years to go in his educational program. He acknowledged that his children would be adults when he finished medical school. He does not argue that his enhanced education credentials will permit him to increase his financial support for his children.

Although we recognize the difficult issues posed for the trial court by these cases, the dilemma here was not insoluble. Harvey could work full time and go to school part time. In that way, he could fulfill his support obligation to his children while pursuing his educational interests. If medical school were unattainable through a part time education, he might have to make necessary adjustments to fulfill his parental obligation. The decision to relieve Harvey of that obligation of adequate support "results in a plain or unmistakable injustice, so apparent that it is instantly visible without argument." *Tardif,* 617 A.2d at 1033 (quoting *Finn v. Finn,* 517 A.2d 317, 318 (Me.1986) (*cert. denied, Finn v. Finn,* 483 U.S. 1022, 107 S.Ct. 3268, 97 L.Ed.2d 767 (1987)). This case must be remanded for reconsideration of the child support determination based on Harvey's current earning capacity as a full-time employee.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to vacate the judgment of the District Court, and remand to the District Court for further proceedings consistent with the opinion herein.

WATHEN, C.J., and GLASSMAN, CLIFFORD and RUDMAN, JJ., concurring.

DANA, Justice, with whom ROBERTS, Justice, joins, dissenting.

I respectfully dissent. When determining a party's gross income for purposes of computing child support payments the trial court "*may* include the difference between the amount a party is earning and that party's earning capacity when the party voluntarily becomes or remains unemployed or underemployed, if sufficient evidence is introduced concerning a party's current earning capacity." 19 M.R.S.A. § 311(5)(D) (Supp.1994) (emphasis added). Consideration of earning capacity as opposed to present income is not mandatory and we should not disturb a court's decision whether to consider earning capacity absent an abuse of discretion. *Rich v. Narofsky,* 624 A.2d 937, 939 (Me.1993). Moreover, we accord "unusual deference" to a court's findings in an order modifying the amount of child support and "will overturn the trial court's decision of such a question only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Tardif v. Cutchin,* 617 A.2d 1032, 1033 (Me.1992) (quoting *Finn v. Finn,* 517 A.2d 317, 318 (Me.1986)).

Unlike determinations of parental rights and responsibilities, determinations of child support payments are not based solely on the standard of the "best interests of the child." *Compare* 19 M.R.S.A. §§ 311–320 (Supp. 1994) *with* 19 M.R.S.A. § 752(5) (Supp.1994).

> Following dissolution of marriage, the custodial parent and children cannot be allowed to freeze the other parent in his employment or otherwise preclude him from seeking economic improvement for himself and his family. So long as his employment, educational or investment decisions are undertaken in good faith and not deliberately designed to avoid responsibility for those dependent on him, he should be permitted to attempt to enhance his economic fortunes without penalty.

*Coons v. Wilder,* 93 Ill.App.3d 127, 48 Ill.Dec. 512, 518, 416 N.E.2d 785, 791 (1981).

The trial court carefully considered the motivations behind Harvey's decision to leave his full-time job in order to pursue a college education while maintaining three part-time jobs. The court reached a conclusion that the decision was one based on good faith and not one motivated by a desire to avoid child support payments. There is substantial evidence to support this finding. Moreover, there is no indication that the court did not consider the best interests of the children when it adjusted Harvey's monthly payments to an amount significantly greater than that suggested by the child support payment guidelines.

I find the trial court's action to be within its considerable discretion, and I would affirm the judgment.